**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**CENTRAL DIVISION**

| | |
|---|---|
| TAIWAN WALLACE, ROGER DAVIS, MICHAEL STURDIVANT, GLEN FLOYD, EMILY COLSON, BRODERICK BURNETT and BRIDGETTE TATE, Individually and on Behalf of All Others Similarly Situated | PLAINTIFFS |
| vs.            Case No. 4:22-cv-337-KGB | |
| EVERGREEN PACKAGING, LLC | DEFENDANT |

**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO COMPEL THE**
**DOCUSIGN AUDIT TRAIL HISTORY FOR OPT-IN PLAINTIFF CONSENT FORMS**

**I.    INTRODUCTION**

In its opening brief, Defendant established that it is entitled to review the audit trail associated with each consent form filed with this Court. Plaintiffs' opposition, which is based on circular or contradictory arguments and patently false premises, does not offer any valid reasons to support their refusal to provide this relevant and readily available information. Instead, Plaintiffs maintain that Defendant is entitled to review the audit trails only if it claims that the electronic signatures are fraudulent. Of course, as Defendant explained in its opening brief, *it can only evaluate the consent forms for the possibility of fraud if it is able to review the DocuSign audit trails*. At the same time, Plaintiffs also argue that Defendant would *never* be entitled to review the audit trails because they are allegedly privileged communications. However, the publicly filed Opt-In consent forms are not individual privileged contracts entered into between Plaintiffs' counsel and the Opt-In Plaintiff – instead, Opt-In consent forms are official pleadings, filed with the Court, that join the Opt-In Plaintiff as a party to this litigation. Defendant does not dispute that following the execution of the consent form, an Opt-In Plaintiff and Plaintiffs' counsel are afforded the protections of attorney-client privilege. Yet, an Opt-In's *signature* on the consent form does

not fall within that privilege, and Defendant is entitled to authenticate the validity of the Opt-In Plaintiff's signature – especially when that consent form is filed with this Court.

Further, Plaintiffs' reliance on the *Brewer* decision is misplaced. Contrary to Plaintiffs' assertion, *Brewer* does not hold that the production of audit trails is burdensome or improper. *Brewer* simply held that Plaintiffs' counsel was not required to *file* the audit trails with the Court as part of the standard notice process. *See Brewer v. All. Coal, LLC,* No. CV 20-41-DLB, 2021 WL 3729297, at *5 (E.D. Ky. Aug. 23, 2021), *reconsideration denied*, No. CV 20-41-DLB-EBA, 2021 WL 5280962 (E.D. Ky. Nov. 12, 2021). Defendant does not (and never has) request that the audit trails be filed with this Court; only that they be produced to Defendants.

Likewise, Plaintiffs' statement that production of the audit trails would inevitably provide Defendant with certain billing and personal e-mail account information is false. As this Court noted in *Holley*, an audit trail simply shows how and when the consent form was viewed, signed, and submitted. *See Holley v. Bitesquad.com LLC,* 416 F. Supp. 3d 809, 813 (E.D. Ark. 2019) (holding that the audit trail indicated that the plaintiff reviewed and signed the hiring packet at issue). No personally identifiable information is provided within the audit trail, nor does Defendant have any interest in reviewing information that does not verify an opt-in plaintiff's signature.

Finally, Plaintiffs mistakenly claim that Defendant's request is untimely, and that Defendant waived its right to request the audit trail. Again, Plaintiff misses the point: Defendant is not challenging this Court's Order allowing for electronic signatures or the use of DocuSign. Defendant is simply requesting that Plaintiffs allow Defendant to authenticate each electronic signature by producing audit trails which are readily available to Plaintiffs' counsel, and which would have been provided to both parties had notice been disseminated through a Third-Party Administrator.

In sum, Defendant is entitled to review the audit trail associated with each consent form filed with this Court. Plaintiffs have offered no justification to support their refusal to provide this information. Thus, Defendant's Motion to Compel should be granted.

## II. ARGUMENT

### A. Arkansas Law and this Court Have Previously Recognized That Audit Trails Are Part of the Electronic Signature.

This Court has previously acknowledged that audit trails serve an important purpose in authenticating an individual's electronic signature. *See Holley,* 416 F. Supp. 3d at 813. Arkansas' Uniform Electronic Transactions Act ("the Act") provides further guidance on this point. Ark. Code Ann. 25-32-101 et seq. While the Act governs state claims, this Court has previously considered the Act when interpreting the validity and legal effect of electronic signatures. *See Daniel v. ABM Indus. Inc.,* No. 4:21-CV-00269-KGB, 2022 WL 993801, at *6 (E.D. Ark. Mar. 31, 2022).

The Act provides that,

(a) **An electronic record or electronic signature is attributable to a person if it was the act of the person. The act of the person may be shown in any manner, including a showing of the efficacy of any security procedure applied to determine the person to which the electronic record or electronic signature was attributable.**

(b) The effect of an electronic record or electronic signature attributed to a person under subsection (a) is determined from the context and surrounding circumstances at the time of its creation, execution, or adoption, including the parties' agreement, if any, and otherwise as provided by law.

Ark. Code Ann. 25-32-109 (emphasis added).

The Act defines "Security Procedure" as,

A procedure employed for the purpose of verifying that an electronic signature, record, or performance **is that of a specific person or for detecting changes or errors in the information in an electronic record. The term includes a procedure that requires the use of algorithms or other codes, identifying words or numbers, encryption, or callback or other acknowledgment procedures**.

Ark. Code Ann. 25-32-102(14) (emphasis added).

Here, Plaintiffs argue that audit trails are not part of an individual's electronic signature. The Arkansas Act proves that is false: since audit trails are the "security procedure" used to verify that an electronic signature is that of a specific person, audit trails are *part of an electronic signature* demonstrating that it was in fact the "act of the person". *See* Ark. Code Ann. 25-32-109; 102(14); *see also Daniel v. ABM Industries, Inc.*, 2022 WL 993801, at *8 (E.D. Ark. Mar. 31, 2022) (Baker, J.,) (finding that the "Log Entries", which show when candidates access the portal to sign documents, electronically demonstrated that the plaintiff actually signed the forms in dispute). The audit trails establish that the opt-in plaintiff was emailed a copy of the notice and consent form at their email address and accessed at the specific date and time listed on the audit trails by the unique IP address also listed on the audit trail. This also includes the time and date of completion and submission. Thus, Defendant is entitled to review the audit trails to verify the *entire* electronic signature.[1]

While Plaintiffs' counsel points to the fact that 'wet' signatures are not notarized, counsel fails to acknowledge that that electronic signatures have a certain anonymity not present in wet signatures since all electronic signatures appear in the same identical format. The purpose of DocuSign's audit trail feature is to provide parties with a way to authenticate these otherwise identical-looking electronic signatures. Given this, Defendant's request that it be permitted to authenticate the electronic signatures through a review of the audit trail is both reasonable and

---

[1] Plaintiffs cite to two cases for the position that electronic signatures do not require production of the audit trails – however, *neither* of those cases stand for that proposition. *See Adkinson v. Tiger Eye Pizza, LLC,* No. 4:19-cv-4007, 2019 U.S. Dist. LEXIS 178897, at *27–28 (W.D. Ark. Oct. 16, 2019); *McChesney v. Holtger Bros., Inc*., No. 4:17-cv-00824-KGB, 2019 U.S. Dist. LEXIS 2435 (E.D. Ark. Jan. 7, 2019)). While each of those cases allow for use of electronic signatures, the defendant in those cases did not ask for the audit trails and the Court likewise did not deny production of the audit trails. Importantly, Defendant here does not object to the use of electronic signatures –instead, Defendant merely asks for verification, which as discussed above, is *part of the electronic signature* demonstrating that the signature was in fact the "act of the person".

necessary.

Plaintiffs also seem to argue that Defendant must point to potential fraud before it is entitled to review the audit trails. Plaintiffs' argument is entirely circular and meritless. Plaintiff cannot on the one hand argue that the audit trails are irrelevant because there is no basis to say that the consent forms are fraudulent while on the other hand stating that Defendant can only review the audit trail if it is able to establish that there was fraud. To be clear, Defendant cannot determine whether there is potential fraud in any of the consent forms *unless and until* it reviews the audit trail to determine the validity of the electronic signatures. As described above and in Defendant's opening brief, the audit trails provide straightforward information regarding the signatory, including his/her email address, and the date, time, and IP address of the signing. [Dkt. 88, at *5]. The DocuSign platform itself makes clear that "[e]very signed DocuSign document comes with a certificate of completion that provides proof of the signing process to all parties of the transaction." [Dkt. 88, at Ex. 1(A)]. As this Court knows, the audit trails are the *only* method by which to verify the authenticity of an electronic signature, and Defendant would not be doing its job without verifying that the opt-in plaintiffs agreed to participate in this litigation and actually signed these consent forms. *See Holley v. Bitesquad.com LLC*, 416 F. Supp. 3d 809 (E.D. Ark. 2019) (Baker, J.) (finding that audit trail authenticated Plaintiff's signature and execution of arbitration agreement).

### B.     The Audit Trails Are Not Privileged.

Plaintiffs also claim that even if this Court agrees that the audit trail is part of the electronic signature, Defendant would still not be entitled to review this information because it is protected by the attorney-client privilege. Again, Plaintiffs set forth a flawed circular argument.

As addressed above, the consent forms are official pleadings filed with the Court that signify an Opt-In Plaintiff's assent to join this claim. They in no way amount to privileged communications with Plaintiffs' counsel. *See United States v. Ivers,* 967 F.3d 709 (8th Cir. 2020)

5

("The attorney-client privilege is narrowly construed and protects only those disclosures, necessary to obtain informed legal advice, which might not have been made absent the privilege."); To be clear, Defendant does not ask this Court to order Plaintiffs to produce *anything* other than the audit trails for the consent forms that were purportedly signed by the opt-in plaintiffs. Communications to Plaintiffs' counsel regarding this litigation following the execution of the consent form may be privileged, but the publicly filed consent form itself, and the corresponding audit trail, is not. *See Rankin v. Payne,* No. 5:06-CV-00228-JM, 2022 WL 1175623, at *4 (E.D. Ark. Apr. 20, 2022) ("A client's identity and "matters existing in the public eye" fall outside the scope of the attorney-client privilege."). Again, the audit trail authenticates the signature that has already been filed with this Court and is wholly unrelated to any subsequent communications that Plaintiffs' counsel may have with any Opt-In.

Importantly, Plaintiffs' counsel (over Defendant's objection) is acting as the administrator of the notice process in this case. Contrary to Plaintiffs' response brief, Defendant has not made any "bold accusations" regarding Plaintiffs' counsel's agreement to conduct themselves as neutral administrators of the notice process. As the administrator, counsel is obligated to remain neutral and effectuate the notice process efficiently and with integrity. *Yue v. Conseco Life Ins. Co.*, 2013 WL 5289743, at *4 (C.D. Cal. 2013) (settlement administrator required to adhere to a preapproved written script and other agreed upon procedures and then to refer additional questions to either the Defendant/s counsel or class counsel—and requiring records to be kept of the communications); *In re American Family Mutual Life Insurance Co. Overtime Pay Litigation*, 2009 WL 248677, *4 (D. Colo. 2009) (use of a third party administrator is appropriate "to protect the integrity of the process"). If notice had been disseminated by a neutral Third-Party Administrator, Plaintiffs would

not be able to argue that the consent forms and the corresponding audit trails were privileged. In fact, both sides' counsel would be entitled to the audit trails without any privilege "concerns."

### C. The Audit Trails Are Readily Available for Plaintiffs' Counsel to Produce, the Request Is Not Burdensome, and Defendant is Prejudiced If It Is Not Afforded the Right to Review the Audit Trails.

Plaintiffs essentially argue that Defendant should simply trust that the electronically signed consent forms are valid without verifying this with the audit trails. Plaintiffs' argument entirely misses the mark. Defendant will suffer *significant* prejudice if it is not allowed to review the audit trails for the electronically signed consent forms because Defendant will be unable to verify that those who agreed to participate in this litigation were the ones who did so. Plaintiffs attempt to distract the Court with the argument that the audit trail contains irrelevant and unnecessary information; however, as this Court knows, that is entirely untrue. Defendant does not seek the "Audit Logs" cited in Plaintiffs' response (which are generally used by plan administrators to review changes to DocuSign accounts). Contrary to Plaintiffs' assertion that account and billing information is contained within the audit trail, the audit trails associated with the consent forms would provide the name, email address, IP address and time and date of viewing and executing the consent form.

Defendant's request is in no way burdensome to Plaintiffs' counsel since, as demonstrated in Defendant's opening brief, the audit trail is a readily available one-page document that provides the date, time and IP address of the execution of the consent form. *See* Dkt. 88, at. Ex. 1(B); *see also, Holley,* 416 F. Supp. 3d at 813. Plaintiffs cite *Brewer*, an inapplicable Eastern District of Kentucky decision. for the proposition that audit trail collection is burdensome. However, *Brewer* involved a request by the defendant to require plaintiffs to file in the court record an audit trail with each and every electronically signed form. *See Brewer*, 2021 WL 3729297, at *4. The *Brewer* Court held that it had little interest in processing the audit trails without a demonstration of

necessity. *Id*. In contrast, here, Defendant has not requested that Plaintiffs' counsel burden the Court with the filing and processing of each audit trail. To the contrary, Defendant requests that it be able to review each audit trail to determine the veracity and authenticity of the signatures, something it is *clearly* entitled to do. Such a request could be easily fulfilled by zip file, shared drive, or any other readily available method for Plaintiffs' counsel's firm. In short, Plaintiffs burdensomeness argument is entirely without merit.

        **D.**       **Defendant's Request Is Timely**

Plaintiffs' argument that Defendant's request for the audit trails is untimely is without merit. Defendant is not trying to relitigate Plaintiffs' Motion for Conditional Certification and Approval of Notice. To the contrary, Defendant timely objected to Plaintiffs' counsel serving as the administrator of the notice process, and the Court overruled this objection. Now, Defendant asks Plaintiffs' counsel, in their role as the administrator, to provide it with the audit trails because they are part of the entire electronic signature of the opt-in plaintiffs. Defendant is certainly entitled to ensure that the electronic signature of the opt-in plaintiffs was done by the "act of the person" – that request is both timely and proper.

**IV.**      **CONCLUSION**

Defendant has demonstrated that it is entitled to review the audit trails that correspond to the electronic signatures of the opt-in plaintiffs, and Plaintiffs have failed to articulate a proper justification for their objection. Plaintiffs' response to Defendant's reasonable production request, i.e., "No – we don't do that," is simply an insufficient reason to withhold these materials. *See* Exhibit 1 of Defendant's Motion to Compel. Indeed, the audit trails are relevant components of the electronic signatures, easily accessible, and could be produced through a variety of means the parties regularly use to exchange information.

For the foregoing reasons, Defendant requests that the Court grant its motion and compel Plaintiffs to (1) produce the audit trails for all opt-in consents previously filed; and (2) produce audit trails for all opt-in consents filed from this date forward.

Dated: July 10, 2023

                                             Respectfully Submitted,

**EVERGREEN PACKAGING, LLC**

John A. Ybarra (admitted *Pro Hac Vice*)
Shanthi V. Gaur
Matthew J. Ruza (admitted *Pro Hac Vice*)
jybarra@littler.com
sgaur@littler.com
mruza@littler.com
LITTLER MENDELSON, P.C.
321 N. Clark Street, Suite 1100
Chicago, Illinois 60654
Tel: 312-372-5520
Fax: 312-372-7880

Eva C. Madison (98183)
emadison@littler.com
LITTLER MENDELSON, P.C.
217 E. Dickson Street, Suite 204
Fayetteville, AR 72701
Tel: 479.582.6100
Fax: 479.582.6111