IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

| | |
|---|---|
| TAIWAN WALLACE, ROGER DAVIS, MICHAEL STURDIVANT, GLEN FLOYD, EMILY COLSON, BRODERICK BURNETT and BRIDGETTE TATE, Individually and on Behalf of All Others Similarly Situated | PLAINTIFFS |
| vs.            Case No. 4:22-cv-337-KGB | |
| EVERGREEN PACKAGING, LLC | DEFENDANT |

## JOINT MOTION TO APPROVE SETTLEMENT AND DISMISS PLAINTIFFS' CLAIMS

**I.     Introduction**

Named Plaintiffs Taiwan Wallace, Roger Davis, Michael Sturdivant, Glen Floyd, Emily Colson, Broderick Burnett and Bridgette Tate, individually and on behalf of all individuals who have returned a signed Consent to Join this case ("Settlement Collective Members" and, together with Named Plaintiffs, Plaintiffs) and Defendant, Evergreen Packaging, LLC ("Evergreen" or the "Company"), (collectively, the "Parties"), have reached a settlement in this lawsuit. The settlement was the result of arm's-length negotiation, conducted by experienced counsel for all Parties, after Plaintiffs answered Evergreen's written discovery requests and various depositions were conducted. Consistent with applicable case law, the attorneys' fees were separately negotiated after the Parties reached agreement on the class's recovery. The terms of the settlement are reasonable, appropriate and fair to all Parties, including the Settlement Collective Members.

After approval, all Settlement Collective Members will receive a Settlement Check, as defined in the Settlement Agreement, issued by an Administrator in exchange for a limited release of all the claims they have in this case for alleged unpaid wages under the Fair Labor Standards

1

Act, 29 U.S.C. § 201 *et seq.*, ("FLSA") and analogous Arkansas law arising out of their work as Hourly-Paid Production Workers for Evergreen in Arkansas between April 1, 2019, and the date of approval.

For the reasons explained below, the Parties' settlement is a fair and reasonable resolution of a *bona fide* dispute between the Parties. As a result, the Parties respectfully request the Court approve the Settlement Agreement, attached hereto as **Exhibit 1**, and dismiss the case with prejudice.

**II.     Facts and Summary of Negotiations**

Evergreen is a nationwide provider of paper packaging solutions and operates two facilities in the State of Arkansas: one in Malvern and one in Pine Bluff. Evergreen's Pine Bluff Paper Mill, where the Named Plaintiffs all worked, specializes in coating paper operations and makes milk and juice cartons that are shipped all over the globe. The Pine Bluff Paper Mill runs 24 hours a day, 7 days a week. In Malvern, the Company produces polypropylene trays used in poultry packaging that are shipped directly to poultry distribution facilities. Unlike the Pine Bluff Mill, employees at the Malvern facility operate on a 2-2-3 schedule, meaning employees work 12-hour shifts two days a week, then have two days a week off, and then work another three days for a full 5-day workweek.

Plaintiffs and the Settlement Collective Members are all current or former Production Workers that worked at either the Pine Bluff or Malvern facilities. Production Workers are non-exempt, hourly paid employees and are responsible for several tasks, depending on which department they are in. Named Plaintiffs represent an FLSA Collective of approximately 545 other Evergreen Production Workers.

Plaintiffs alleged in this litigation that Evergreen violated the FLSA and analogous Arkansas law by engaging in a "rounding practice" whereby hours worked by employees allegedly were rounded down and "went unrecorded and uncompensated." [Dkt. 1, ¶35]. Plaintiffs provided the following example: "If a production worker clocked in for 8 hours and 10 minutes, [Evergreen] would round that worker's hours down to exactly 8 hours." [Dkt. 1 ¶34]. Plaintiffs argued that because of the rounding practice, they were left uncompensated for time they worked over forty-hours per week. [Dkt., 1 ¶36]. Defendant denies any and all alleged wrongdoing.

On March 31, 2023, this Court granted in part and denied in part Plaintiffs' Motion for Conditional Certification and for Approval and Distribution of Notice. [Dkt. 63]. The Court conditionally certified a collective of all non-exempt Production Workers, employed by Evergreen within the State of Arkansas, at any time since April 12, 2019. Thereafter, a Court-approved notice and consent were sent to all members of the proposed collective by U.S. mail. 545 individuals filed consents to join after the notice was mailed.

Evergreen issued and the Named Plaintiffs answered Evergreen's written discovery requests. Additionally, Evergreen deposed Taiwan Wallace and Roger Davis. After these depositions, both Plaintiffs and Defendant began to review their respective positions, and counsel for both sides began initial talks to resolve this litigation.

Class Collective Counsel made a thorough and independent investigation of the facts and law relating to the allegations in the litigation, and in agreeing to the Settlement Agreement, Class Collective Counsel considered (i) the facts developed during litigation and settlement negotiations and the law applicable thereto; (ii) the attendant risks of continued litigation and the uncertainty of the outcome of the claims alleged against Evergreen; and (iii) the desirability of consummating this Settlement Agreement for finality and resolution. The Parties thereby acknowledge that this

matter should be resolved because continuing to litigate these issues would prolong litigation, consume a significant amount of time and generate significant additional expenses.

The Parties now present the Settlement Agreement to the Court for approval. The Settlement Agreement offers significant advantages over the continued prosecution of this case: Plaintiffs and the Settlement Collective Members will receive significant financial compensation within weeks of the Court's Order entering Final Approval, and each Settlement Collective Member maintains the right to determine whether or not to deposit his/her settlement check, thereby releasing their claims for alleged unpaid wages against Evergreen, its present and former parent companies, subsidiaries, and affiliates, or to forego the payment and maintain the right to pursue individual litigation on their own. The Parties agree that the terms of the proposed settlement, summarized below, are fair and reasonable and should be approved by this Court.

### III. The Settlement

#### A. Summary of the Agreement

Under the Settlement Agreement and subject to approval by this Court, the Parties seek to certify a collective action under the FLSA for settlement purposes only and send notice and settlement checks to all Settlement Collective Members, as defined below; provide releases in favor of Evergreen; allow Plaintiffs' counsel to separately seek approval of attorneys' fees and costs; and allow the Named Plaintiffs to seek a Service Award.

#### B. Certification for Settlement Purposes Only

The Parties ask this Court to certify, for settlement purposes only, a collective action pursuant to Section 216(b) of the FLSA. The Settlement Collective Members, as defined below, would be provided notice and the opportunity to participate in the settlement:

> Every individual who signed, dated, and filed an opt-in consent form with the Court to participate in the Lawsuit as an opt-in plaintiff and has a Qualifying Workweek

4

during the Collective Period, and did not fully release all wage & hour claims in the case entitled *Carreno v. Evergreen Packaging*, Case No. 20-CV-01502, United States District Court for the Eastern District of Arkansas, including the Named Plaintiffs.[1]

The certification of a collective action under the FLSA for settlement purposes would allow the Parties seek to send a Court-approved Notice Packet detailing the settlement to all of the Settlement Collective Members. (The Notice Packet is Exhibit A to the Settlement Agreement). Along with the Court-approved notice, all Settlement Collective Members will receive a check they can endorse and cash to join the settlement. The Notice Packet explains that by signing and cashing the check, the individual is agreeing to participate in the settlement. If a Settlement Collective Member chooses not to cash their settlement check, then that individual loses no rights and is free to pursue their individual claim, if desired, as they see fit. Unlike a class action, where there are absent class members and a class member may lose rights unless they opt-out, in a collective action settlement such as this one, individuals forfeit no rights unless they voluntarily choose to be part of the lawsuit and cash the check.

    C.    Amount of Settlement

        1.    *Amount of Fund and Individual Awards*

As reflected in the Settlement Agreement, the Parties first negotiated and agreed to a settlement in the amount of Three Hundred Ninety-Nine Thousand Nine Hundred Ninety-Nine Dollars ($399,999.00) for the class's recovery. They then separately negotiated an attorneys' fee

---

[1] Of the 545 individuals who timely signed and dated their opt-in consent forms, only 516 of them will receive Settlement Checks under the terms of this Agreement. This is because 29 of the opt-in Plaintiffs either fully released their claims in the *Carreno v. Evergreen Packaging* settlement, referenced above, or they did not have a Qualifying Workweek, as defined in the Settlement Agreement, during the relevant statute of limitations period.

award in the amount of Fifty Thousand Dollars ($50,000.00)[2]. Therefore, Evergreen agreed to create a fund of Four Hundred Forty-Nine Thousand Nine Hundred Ninety-Nine Dollars ($449,999.00) (Defined in the Settlement Agreement as the "Gross Settlement Amount"). Out of the Gross Settlement Amount, Evergreen agrees to pay **all** Settlement Collective Members their pro rata share of the Gross Settlement Amount; the Service and General Release Award to the Named Plaintiffs; attorneys' fees; and costs and expenses, including expenses of administration; all settlement consideration; and all resulting employee paid withholding and payroll taxes (including, but not limited to, all state and federal income taxes, social security contributions and unemployment taxes).

To calculate each Settlement Collective Member's share of the settlement, the Parties will first calculate the Net Member Payments by subtracting from the Gross Member Payments the following amounts: (i) Service Awards to the Named Plaintiffs, which total $5,000.00 (the complete list of all Service Awards is Exhibit D to the Settlement Agreement); (ii) any contingency award for attorneys' fees and costs, which shall be determined solely by this Court; (iii) Settlement Administrator costs; and (iv) all Minimum Payments owed to the Settlement Collective Members. Minimum Payment is defined in the Settlement Agreement as Fifty Dollars ($50.00). Each Settlement Collective Member's Net Wage and Liquidated Damages Payments is described in Paragraph 25 of the Settlement Agreement and includes a Minimum Payment to each Collective Member and payments based on a pro rata share of Qualifying Workweeks that Collective Members collectively worked as a Production Worker during the Collective Period. Qualifying Workweeks is defined in the Settlement Agreement as the number of workweeks that a Collective

---

[2] Counsel for Plaintiffs' will separately seek fees in excess of the $50,000.00 separately negotiated fee award and will file their Motion for Fees separate from the Parties' Joint Motion for Approval within three (3) days of this filing.

Member both: (i) worked as a Production Worker; and (ii) performed any work as a Production Worker during the workweek. The average recovery for a Settlement Collective Member is approximately $506.00.

      2.    *Service and General Release Award*

Evergreen does not oppose Plaintiffs' Counsel's request for approval of a Service and General Release Award totaling $5,000 as described in the Settlement Agreement and in more detail below. This Service and General Release Award is given for more than just a recognition of the Named Plaintiffs' efforts on behalf of the Settlement Collective Members. It is also given in exchange for a general release of claims as to Evergreen.

      3.    *Release*

If the Settlement Agreement is approved, all Settlement Collective Members who voluntarily choose to accept this Settlement by timely signing, cashing and depositing their Settlement Check will release all claims that relate to the alleged failure to pay all compensation for all hours worked, including claims under the FLSA and applicable state wage and hour laws or common laws, and any and all claims with respect to the time that the Settlement Collective Members were employed by Evergreen during the period of April 12, 2019 through the Effective Date of the Settlement Agreement. The consideration of the payments made by Evergreen and the terms of the Settlement Agreement shall be in exchange for entry of the final judgment and dismissal with prejudice of the litigation and the release as set forth in the Settlement Agreement.

Because this is a settlement agreement under the FLSA, there are no absent class members. Consequently, any Settlement Collective Members who do not wish to participate, and therefore does not sign, cash, or deposit their check, will not release any claims, and will not be bound by the Settlement Agreement.

## IV. Argument

### A. The Court Should Certify The Collective.

The Parties jointly request, for settlement purposes only, that the Court certify this action as a collective action pursuant to Section 216(b) of the FLSA, and direct notice to the Settlement Collective Members. Evergreen stipulates to and does not oppose certification.[3] Under the FLSA, an action may be brought "by any one or more employees for and on behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). Collective actions brought under section 216(b) are "intended to serve the interests of judicial economy and to aid in the vindication of plaintiffs' rights." *Adkinson v. Tiger Eye Pizza, LLC*, 4:19-CV-4007, 2019 WL 5213957, at *1 (W.D. Ark. Oct. 16, 2019) (quoting *Resendiz-Ramirez v. P & H Forestry, LLC*, 515 F. Supp. 2d 937, 939 (W.D. Ark. 2007)).

Collective actions brought under section 216(b) are pursued as an opt-in class, unlike a class action under Rule 23. *Resendiz-Ramirez*, 515 F. Supp. 2d at 939 (comparing 29 U.S.C. § 216(b) (stating that "[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which the action is brought.") with Fed. R. Civ. P. 23(c) (requiring that the notice to class members include a statement "that the court will exclude from the class any member who requests exclusion . . . .")); *Arkansas Dep't of Veterans Affairs v. Okeke*, 2015 Ark. 275, 6, 466 S.W.3d 399, 403 (2015) (recognizing that collective actions brought under section 216(b) are "entirely different" than class certification under Rule 23); *Adkinson*, 2019 WL 5213957, at *1 ("Because Plaintiffs bring a collective action pursuant to the FLSA, they must use the opt-in mechanism under 29 U.S.C. §

---

[3] In so stipulating, Evergreen does not waive, and instead expressly reserves, its right to challenge the propriety of certification of the FLSA collective in the event the Parties' proposed settlement is not approved by the Court.

8

216(b) for joining members of the proposed collective as opposed to the opt-out procedures set forth in Federal Rule of Civil Procedure 23").

Certification of a collective under section 216(b) is "considerably less stringent" than the standards for certification of a class action under Rule 23. *Resendiz-Ramirez*, 515 F. Supp. 2d at 940. "Ultimately, certification of a collective action will depend on whether the named plaintiffs are similarly situated to the [collective members]." *Murray v. Silver Dollar Cabaret, Inc.*, No. 5:15-cv-5177-PKH, 2017 WL 514323, at *2 (W.D. Ark. Feb. 8, 2017).

Section 216(b) does not provide a standard for courts to utilize when determining whether the plaintiff and the collective members are "similarly situated," and the Eighth Circuit has not yet enunciated a standard. *Adkinson*, 2019 WL 5213957, at *2. However, the prevailing approach within the Eight Circuit for collective action certification under section 216(b) is the two-stage analysis. *Id.*; *Resendiz-Ramirez*, 515 F. Supp. 2d at 940 (confirming that the majority of district courts within the Eighth Circuit use the two-stage analysis because it is the "more prudent approach"); *McQuay v. American Int'l Group, Inc.*, No. 4:01CV00661 WRW, 2002 WL 31475212 (E.D. Ark. Oct. 25, 2002) (using the two-stage analysis); *Schleipfer v. Mitek Corp.*, No. 1:06CV109 CDP, 2007 WL 2485007 (E.D. Mo. Aug. 29, 2007) (citing *Parker v. Rowland Express, Inc.*, 492 F. Supp. 2d 1159 (D. Minn. 2007)) (same); *Davis v. NovaStar Mortgage, Inc.*, 408 F. Supp. 2d 811 (W.D. Mo. 2005) (same); *Dietrich v. Liberty Square L.L.C.*, 230 F.R.D. 574 (N.D. Iowa 2005) (same).

Certification of this proposed collective is appropriate as it comports with the prevailing approach in the Eight Circuit. This Court on March 31, 2023, conditionally certified the collective. [Dkt. 63]. The collective is clear and undisputed and demonstrates that the members are similarly situated per the FLSA. All members of the collective worked as non-exempt Production Workers,

9

employed by Evergreen within the State of Arkansas, at any time since April 12, 2019. 545 individuals filed consents to join after the notice was sent out. With a conditionally certified collective of over 545 allegedly similarly situated individuals, there can be little doubt that collective treatment is appropriate. Under this set of facts – coupled with Evergreen's consent to certification for facilitating settlement – notice to the Settlement Collective Members is warranted and the collective should be certified for settlement purposes only. *Webb v. S. Aluminum Mfg. Acquisition, Inc.,* 1:19-CV-1059, 2022 WL 801559, at *1 (W.D. Ark. Mar. 15, 2022) (recognizing that a court may certify a collective under section 216(b) for settlement purposes only).

    B.    <u>The Settlement Should be Approved.</u>

To ensure the settlement agreement releasing claims under the FLSA is valid and enforceable, the parties request judicial review and approval of the Settlement Agreement. "Settlement agreements resolving FLSA claims are typically subject to court approval. Before approving a settlement, a court must ensure that the parties are not negotiating around the FLSA's requirements and that the settlement represents a fair and reasonable resolution of a *bona fide* dispute." *Younger v. Centers for Youth & Families, Inc.*, No. 4:16-CV-00170-KGB, 2017 WL 1652561, at *1 (E.D. Ark. Apr. 27, 2017) (citations omitted); *Adkinson v. Tiger Eye Pizza, LLC*, No. 4:19-cv-4007, 2022 WL 1050913, at *1 (W.D. Ark. Apr. 7, 2022) (recognizing that an FLSA settlement will be approved only if the court determines that it "involves a *bona fide* dispute and that the proposed settlement is fair and equitable to all parties."); *Okada v. Eagle's HVAC, LLC*, No. 2:16-CV-02245, 2017 U.S. Dist. LEXIS 205376, at *3 (W.D. Ark. Dec. 14, 2017) (same). Although it remains an open question in the Eighth Circuit whether the FLSA requires judicial approval of settlements, District Courts in the Eighth Circuit typically review a proposed FLSA

settlement's terms for fairness to ensure that the parties are not left in an "uncertain position." *Adkinson*, 2022 WL 1050913, at *1.

      1.    *The settlement resolves a bona fide dispute*.

A settlement addresses a *bona fide* dispute when it "reflects a reasonable compromise over issues actually in dispute." *Adkinson*, 2022 WL 1050913, at *2 (citations omitted). The "threshold for establishing whether a *bona fide* dispute exists between the parties is a low one met where the parties are in disagreement about the wages to be paid and liability of the issues." *Adkinson*, 2022 WL 1050913, at *2. Here, there can be no dispute that a clear *bona fide* dispute exists which the Settlement Agreement would resolve. Evergreen has denied Plaintiffs' claims entirely, arguing that, even if the facts are as Plaintiffs allege, Evergreen's actions were not violative of the FLSA or analogous Arkansas law and do not impose any liability on Evergreen.

Specifically, with regard to Plaintiffs' rounding claims, Plaintiffs allege that Evergreen rounded hours worked by Plaintiffs and other Production Workers in Evergreen's favor by rounding down in approximately fifteen-minute increments. Evergreen denies these allegations and denies that it undercompensated Production Workers. If anything, Evergreen's position is that any allegedly unpaid wages are limited to only a few minutes.

Significant complicated factual and legal questions therefore exist which would require intensive discovery and litigation, and potentially expert testimony, such as, *inter alia*, (i) factual analysis of any improper impact on employee compensation attributable to Evergreen's rounding practices; (ii) whether Evergreen's rounding practices in fact violated the FLSA and analogous Arkansas law; and (iii) how damages would be determined. The settlement would resolve all of these *bona fide* disputes.

      2.    *The settlement is "fair and reasonable."*

To determine whether the proposed FLSA settlement is fair and reasonable, the Eighth Circuit considers the totality of the circumstances, including the following factors: "the stage of the litigation and the amount of discovery exchanged, the experience of counsel, the probability of success on the merits, any 'overreaching' by the employer in the settlement negotiations, and whether the settlement was the product of arm's length negotiations between the parties based on the merits of the case." *Trogdon v. Kleenco Maint. & Constr., Inc.*, No. 5:14-cv-5057-PKH, 2016 WL 7664285, at *2 (W.D. Ark. Nov. 18, 2016). "This approach focuses on the fairness of the process used by the parties in reaching a settlement." *Grahovic v. Ben's Richardson Pizza Inc.*, No. 4:15-cv-1659-NCC, 2016 WL 1170977, at *2 (E.D. Mo. Mar. 25, 2016). In consideration of the foregoing factors, the Settlement Agreement merits approval.

First, the Parties were each represented by counsel with extensive experience in litigating wage and hour matters. Plaintiffs' counsel – Sanford Law Firm, PLLC – have extensive experience and knowledge relating to litigating FLSA and state wage and hour claims, including the case *Carreno v Evergreen Packaging,* Case No. 20-CV-01502 referenced in the proposed Notices. Evergreen, meanwhile, is represented by Littler, a premiere, nationwide firm well-known for its expertise specifically in defending employers in wage and hour litigation. During the litigation, Evergreen issued written discovery and Plaintiffs provided substantive responses. Additionally, Evergreen deposed Taiwan Wallace and Roger Davis. While both parties remain confident in the strength of their claims and defenses, both faced considerable risk and uncertainty in continued litigation. Perhaps most significantly, the Settlement Agreement was reached through arm's-length negotiations between experienced counsel on both sides.

In light of *bona fide* issues at stake, the uncertainty of the outcome of any potential litigation, the benefits to the Parties (including a significant monetary payment to the Settlement

Collective Members), the experience of the Class Collective Counsel, information shared between the parties, the Settlement is fair and reasonable and should be approved.

B. A Service Award Should be Approved.

The Parties have agreed to a cumulative Service Award of $5,000.00 to the Named Plaintiffs. This payment is in recognition of the time and effort that the Named Plaintiffs provided in bringing this case, including important information that allowed counsel to understand the systems in use by Evergreen and whether such practices were potentially violative of the FLSA and/or analogous Arkansas law. Moreover, service awards also acknowledge the personal risks and exposure that potentially comes with being a named plaintiff. Finally, in an employment context, courts recognize that service awards are particularly appropriate because they "promote the public policy of encouraging individuals to undertake the responsibility of representative lawsuits." *Caligiuri v. Symantec Corp.*, 855 F.3d 860, 867 (8th Cir. 2017).

Courts in this Circuit have regularly approved service awards ranging from $500.00 to $10,000.00 or greater. *See, e.g., McClean v. Health Sys., Inc.,* 6:11-CV-03037-DGK, 2015 WL 12513703, at *4 (W.D. Mo. Aug. 4, 2015) (approving a $500.00 service award); *Netzel v. W. Shore Grp., Inc.*, 2017 U.S. Dist. LEXIS 214868, at *18-20 (D. Minn. May 8, 2017) (citation omitted) (approving service awards of $5,000.00 and $3,000.00); *Harris v. Chipotle Mexican Grill*, No. 16-cv-2552 (RHK/LIB), 2018 U.S. Dist. LEXIS 14359, *11 (D. Minn. Jan. 29, 2021) (approving service awards of $15,000.00 and $7,500.00); *Huyer v. Njema*, 847 F.3d 934, 941 (8th Cir. 2017) (affirming approval of settlement that included $10,000.00 service awards to named plaintiffs).

The cumulative Service Award of $5,000.00 to the Named Plaintiffs is both modest and appropriate. Specifically, Broderick Burnett, Emily Colson, Roger Davis, Glen Floyd, Michael Sturdivant and Bridgette Tate will each receive a Service Award of $500.00. Taiwan Wallace will receive a Service Award of $2,000.00. Each of the Named Plaintiffs directly furthered this case by

providing answers to Evergreen's discovery requests and by providing their Declarations in support of certification of the collective.

      D.    <u>The Proposed Notice is Informative and Reasonable.</u>

Under relevant FLSA case law, the notice must be "timely, accurate, and informative." *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 172 (1989). As demonstrated in Exhibit A to the Settlement Agreement, the Parties' proposed notice meets these requirements, as it is "reasonable," "accurate and informative" and will be "timely" provided. Specifically, the Notice Packet informs Settlement Collective Members as to the nature of the suit, why they are receiving the Notice, the terms of the Settlement and how it was reached, the benefits and consequences of the Settlement and an estimate of their personal share of the Settlement.

Further, if the Court approves the settlement and the proposed form of notice, the Settlement Administrator will take all reasonable steps to ensure the accurate and complete distribution of the notices.

**V.**    **Conclusion**

The Parties have agreed to settle all claims in this dispute through execution of the Settlement Agreement. (*See* Exhibit 1). While Evergreen does not admit liability or wrongdoing, all Parties agree and represent that, in accordance with the terms of the Settlement Agreement, Plaintiff are receiving a reasonable and satisfactory recovery. Thus, the Parties respectfully request that the Court approve the settlement and issue an Order dismissing this action with prejudice and directing the entry of final judgment.

| | |
|---|---|
| Josh Sanford (2001037)<br>Sean Short<br>josh@sanfordlawfirm.com<br>sean@sanfordlawfirm.com<br>Sanford Law Firm, PLLC<br>Kirkpatrick Plaza, Suite 510<br>10800 Financial Centre Parkway<br>Little Rock, AR 72211<br>Tel: 501-221-0088<br>Fax: 888-787-2040<br><br>Attorneys for Plaintiffs | /s/ *Matthew J. Ruza*<br>John A. Ybarra (admitted *Pro Hac Vice*)<br>Shanthi V. Gaur<br>Matthew J. Ruza (admitted *Pro Hac Vice*)<br>jybarra@littler.com<br>sgaur@littler.com<br>mruza@littler.com<br>LITTLER MENDELSON, P.C.<br>321 N. Clark Street, Suite 1100<br>Chicago, Illinois 60654<br>Tel: 312-372-5520<br>Fax: 312-372-7880<br><br>Eva C. Madison (98183)<br>Kyle D. Kennedy (2017104)<br>emadison@littler.com<br>kkennedy@littler.com<br>LITTLER MENDELSON, P.C.<br>217 E. Dickson Street, Suite 204<br>Fayetteville, AR 72701<br>Tel: 479.582.6100<br>Fax: 479.582.6111<br><br>Attorneys for Defendant |