**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**CENTRAL DIVISION**

TAIWAN WALLACE, ROGER DAVIS,                               PLAINTIFFS
MICHAEL STURDIVANT, GLEN FLOYD,
EMILY COLSON, BRODERICK BURNETT
and BRIDGETTE TATE, Individually and on
Behalf of All Others Similarly Situated


vs.                              Case No. 4:22-cv-337-KGB


EVERGREEN PACKAGING, LLC                                    DEFENDANT

<u>**COLLECTIVE SETTLEMENT AGREEMENT FOR ALL CLAIMS**</u>

1.      This Settlement Agreement and Release (the "Agreement") is entered into between Named Plaintiffs Taiwan Wallace, Roger Davis, Michael Sturdivant, Glen Floyd, Emily Colson, Broderick Burnett and Bridgette Tate individually and on behalf of all Settlement Collective Members (as defined below) and Evergreen Packaging, LLC ("Defendant"), (collectively, the "Parties"), subject to the approval of the Court.

<u>**RECITALS**</u>

2.      Named Plaintiffs individually and on behalf of others, filed Litigation (as defined below) asserting that Defendant failed to pay proper overtime compensation under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*. ("FLSA") and the Arkansas Minimum Wage Act ("AMWA").

3.      As a result of the Parties' arms'-length negotiations, the Parties have agreed to settle this Litigation (as defined below) according to the terms of this Agreement.

4.      Upon a motion filed by Named Plaintiffs, on April 3, 2023, the Court conditionally certified a class of all Hourly-Paid Production Workers in Arkansas who were employed by Defendant since April 12, 2019. Thereafter, a court-approved notice and consent were sent to all members of the proposed collective by mail. 545 individuals filed consents to join after the notices were mailed.

5.      Class Collective Counsel (as defined below) has made a thorough and independent investigation of the facts and law relating to the allegations in the Litigation.  In agreeing to this Agreement, Class Collective Counsel has considered: (a) the facts developed during the Parties' litigation and settlement negotiations and the law applicable thereto; (b) the attendant risks of continued litigation and the uncertainty of the outcome of the claims alleged against Defendant; and (c) the desirability of consummating this Agreement according to the terms of the Agreement. Named Plaintiffs Wallace, Davis, Sturdivant, Floyd, Colson, Burnett, and Tate also concluded that

the terms of this Settlement are fair, reasonable, and adequate, and that it is in the best interests of the Named Plaintiffs and all Settlement Collective Members to settle their claims against Defendants pursuant to the terms set forth herein.

6.      Defendant denies the allegations in this Litigation and denies that it engaged in any wrongdoing or violation of law. Defendant is entering into this Agreement because it will eliminate the burden, risk, and expense of further litigation.  Neither this Agreement nor any document referred to herein, nor any action taken to carry out this Agreement, may be admissible or used in any way as an admission, concession, or indication by or against Defendant of any fault, wrongdoing, or liability whatsoever, including any concession that certification of a class other than for purposes of this Settlement would be appropriate in the Litigation or any other case.

7.      The Parties recognize that Court approval of this Agreement is required to effectuate the Settlement, and that the Settlement will not become operative until the Court grants approval of the Agreement and the Settlement becomes effective.

8.      Should this Settlement not become final, this Agreement shall have no bearing on, and shall not be admissible in connection with any further proceedings in this Litigation (as defined below) or in any other proceeding.

9.      In consideration of the foregoing and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged by each party to the other, IT IS HEREBY AGREED, by and between the undersigned, subject to the approval of the Court and the other conditions set forth herein, that the claims of Named Plaintiffs and the Settlement Collective Members (as defined below) claims against Defendant shall be settled, compromised, and dismissed, on the merits and with prejudice, and that the Released Claims (as defined below) shall be finally and fully compromised, settled, and dismissed as to the Releasees (as defined below), in the manner and upon the terms and conditions set forth below.

## DEFINITIONS

10.      The following terms used in this Agreement shall have the meanings ascribed to them below:

a.      "**Acceptance Period**" means the 90 Day period after the mailing of the Notice Packet during which a Settlement Collective Member may sign and cash a Settlement Check before the Settlement Check shall be non-negotiable.

b.      "**Claims Administrator**" means RG2 Claims Administration LLC, the Claims Administrator chosen by Defendant, and which is compensated from the Gross Settlement Amount in the amount of $8,500.00 payable to the Claims Administrator. The Parties agree to cooperate in the settlement administration process and to make all reasonable efforts to control and minimize the costs incurred in the administration of the Settlement.

c.      "**Class Collective Counsel**" means Josh Sanford and Sanford Law Firm, PLLC, located at Kirkpatrick Plaza, 10800 Financial Centre Parkway, Suite 510, Little Rock, Arkansas 72211.

d.      "**Collective Period**" means the time period from April 12, 2019, up to and including the date the Order Granting Approval of Settlement is entered.

e.      "**Complaint**" means the Complaint filed on April 12, 2022, by the Named Plaintiffs in this Litigation, a copy of which is attached to this Agreement as **Exhibit C**.

f.      "**Court**" means the United States District Court for the Eastern District of Arkansas, Central Division.

g.      "**Day**" means, for purposes of this Settlement only, calendar days from the Effective Date. If a relevant date falls on a Saturday, Sunday, or legal holiday, the action triggered under the terms of this Settlement shall commence on the following business day.

h.      "**Defendant's Counsel**" means Littler Mendelson, P.C.

i.      "**Defendant**" means Evergreen Packaging, LLC.

j.      "**Effective Date**" is the date as defined in Paragraph 12 below.

k.      "**Employer Payroll Taxes**" means Evergreen's share of any taxes that it is required to pay arising out of the payment of any monies to Settlement Collective Members as part of this Settlement, including FICA, FUTA, and SUTA obligations.

l.      "**Evergreen**" means Evergreen Packaging, LLC, and its present and former parent companies, subsidiaries, and affiliates who employed and/or now employ Settlement Collective Members.

m.      "**Fee Award**" means the award of attorneys' fees, costs, and expenses to be paid to Class Collective Counsel for the services they provided to the individuals in the Litigation. Class Collective Counsel will move the Court for $187,500.00 of the Gross Settlement Amount, consisting of a separately negotiated $50,000.00 as well as an additional $137,500.00 pursuant to their contingency agreement with Named Plaintiffs of 40% plus costs of the total settlement. The Fee Award to Class Collective Counsel will be included within the Gross Settlement Amount. Under no circumstances shall Defendant pay Class Collective Counsel more than the requested $187,500.00, if it is approved by the Court, as the Fee Award.

n.      "**Gross Settlement Amount**" equals a maximum amount of Four Hundred Forty-Nine Thousand Nine Hundred Ninety-Nine Dollars ($449,999.00). The Gross Settlement Amount is the maximum total gross amount that Evergreen agrees to pay to fully resolve and settle all of the claims now asserted or that could have been asserted in this Litigation, including any claim for attorneys' fees and any costs. The Gross Settlement Amount is the sum of the negotiated amount of the Gross Member Payments, the Service Awards, and the Fee Award. Under no circumstances will Evergreen be required to pay more than the Gross Settlement Amount pursuant to this settlement, other than Employer Payroll Taxes.

o.      "**Gross Member Payments**" which is entirely payable from the Gross Settlement Amount, means the maximum total of $399,999.00 that Evergreen will pay for wages and

Doc ID: 861c887053f5ed22fb4c11522dc47ba090e9f15f

liquidated damages to the Settlement Collective Members. This amount will be subject to Class Collective Counsel's request for the Fee Award.

p.        "**Litigation**" means the lawsuit that Wallace, Davis, Sturdivant, Floyd, Colson, Burnett, and Tate filed against Defendant on April 12, 2022, styled Case No. 4:22-cv-337-KGB, *Taiwan Wallace, Roger Davis, Michael Sturdivant, Glen Floyd, Emily Colson, Broderick Burnett and Bridgette Tate, Individually and on Behalf of All Others Similarly Situated v. Evergreen Packaging, LLC,* in the United States District Court for the Eastern District of Arkansas, Central Division.

q.        "**Named Plaintiffs**" means Taiwan Wallace, Roger Davis, Michael Sturdivant, Glen Floyd, Emily Colson, Broderick Burnett and Bridgette Tate, all of whom served as the Named Plaintiffs in this Lawsuit.

r.        "**Net Member Payments**" means Gross Member Payments less the approved Service Award, Fee Award, and all Minimum Payments (as defined in Paragraph 24).

s.        "**Notice Packet**" means the document titled Notice of Settlement, to be approved by the Court in a form substantially similar to the Notice attached hereto as **Exhibit A,** the "Settlement Check" to each Settlement Collective Member as defined in Paragraph 16 below, and the Service Awards to the Named Plaintiffs.

t.        "**Order Granting Approval of Settlement**" or "**Approval Order**" means an Order from the Court (i) asserting jurisdiction over the claims in the Litigation and the Settlement; (ii) granting final judgment pursuant to the terms provided herein (or as the same may be modified by subsequent mutual agreement, in writing, of the Parties); (iii) adjudging the terms of the Settlement Agreement to be a fair and reasonable resolution of a bona fide dispute, and directing consummation of its terms and provisions, including issuance of payment to the Settlement Collective Members; (iv) dismissing the Litigation on the merits and with prejudice and permanently enjoining all Settlement Collective Members from prosecuting against Evergreen and the Releasees (as defined in Paragraph 10(y) any Released Claims (as defined in Paragraph 15) and (v) retaining jurisdiction to enforce the Settlement Agreement.

u.        "**Parties**" means the Named Plaintiffs and Evergreen.

v.        "**Production Worker**" means all Settlement Collective Members who were employed in one or more of those positions during the Collective Period.

w.        "**Qualified Settlement Fund**" or "**QSF**" means an interest-bearing account held by the Claims Administrator, to effectuate the terms of the Agreement and the orders of the Court, to be treated for federal income tax purposes pursuant to Treas. Reg. § 1.46B-1. The Claims Administrator shall establish the QSF within three (3) Days after the Effective Date. The Claims Administrator shall be responsible for establishing, administering, and otherwise operating the QSF, including preparing and filing federal and state tax returns with applicable government tax authorities, and remitting tax withholdings to the applicable government tax authorities.

x.   "**Qualifying Workweeks**" means the number of workweeks that a Settlement Collective Member both: (i) worked as a Production Worker; and (ii) performed any work as a Production Worker during the workweek.

y.   "**Releasee**" means Defendant Evergreen Packaging, LLC, Pactiv Evergreen Group Holdings, Inc., Pactiv LLC, and their parents, subsidiaries, related entities, and affiliates (including their directors, officers, shareholders, owners, employees, attorneys, partners, and agents, past, present and future), and each of their respective predecessors, successors, transferees, and assigns.

z.   "**Service Awards**" means the awards which shall be paid to the Named Plaintiffs, as part of their Settlement Checks, in recognition of their time and efforts on behalf of the Settlement Collective Members, and also in recognition of their broader release of claims as set forth in Paragraph 18, herein.

aa.   "**Settlement**" means the terms of this Agreement reached between the Parties to settle the claims in the Litigation.

bb.   "**Settlement Check**" means the check issued to each Settlement Collective Member for their proportionate share of the Net Member Payments. The Settlement Check will consist of 50% Net Wage Payments, as defined in Paragraph 24(a) and 50% Liquidated Damages, as defined in Paragraph 24 below.

cc.   "**Settlement Collective Member**" means each and every individual who signed, dated, and filed an opt-in consent form with the Court to participate in the Lawsuit as an opt-in plaintiff and has a Qualifying Workweek during the Collective Period, and did not fully release all wage & hour claims in the case entitled *Carreno v. Evergreen Packaging*, Case No. 20-CV-01502, United States District Court for the Eastern District of Arkansas, including the Named Plaintiffs.

## SETTLEMENT TERMS

11.   **Final Settlement.** It is the desire and intention of the Parties that this Stipulation and Settlement Agreement shall, for the Settlement Collective Members, fully, finally, and forever completely settle, compromise, release, and discharge any and all Released Claims (as defined in Paragraph 15).

12.   **Effective Date**. The Effective Date shall be thirty-three (33) Days from the date of the entry of the Court's Approval Order. However, if an appeal is filed within the Appeal Period, then the Effective Date shall be the latest of: (i) the date of final affirmance of the Court's Approval Order; (ii) the expiration of the time for a petition for writ of certiorari to review the Approval Order if affirmed and, if certiorari is granted, the date of final affirmance of the Approval Order following review pursuant to that grant; or (iii) the date of final dismissal of any appeal from the Approval Order or the final dismissal of any proceeding on certiorari to review the Approval Order that has the effect of confirming the Approval Order. If there is no Effective Date: (i) the Settlement Agreement shall have no force and effect, and no Party shall be bound by any of its terms; (ii) Defendant shall have no obligation to make any payments to the Settlement Collective Members, inclusive of the Named Plaintiffs or Class Collective Counsel; and (iii) the Settlement Agreement and all negotiations, statements, proceedings, and data relating thereto shall be protected by

Federal Rule of Evidence Rule 408 and shall be without prejudice to the rights of any of the Parties, all of whom shall be restored to their respective positions in the Litigation as of the date the stay of this Litigation was ordered by the Court, which was in place while the Parties pursued mediation and arms-length negotiations. In such event, the Parties shall work cooperatively to attempt to resolve any issues that the Court has raised regarding the Agreement so that the Agreement gains the Court's approval, or alternatively, effectuate their intent to resume Litigation. If the issues cannot be resolved to the satisfaction of the Court and the Parties, then the Parties will withdraw the petition for approval and seek approval first from the Court.

13.     **Fair and Reasonable Resolution of a _Bona Fide_ Dispute.** Defendant agrees to pay the Gross Settlement Amount to fund and satisfy all of its settlement obligations in the Litigation. Payment by Defendant pursuant to this Settlement Agreement shall settle all pending issues between the Parties under the Settlement as set forth herein. Any payments made to the Settlement Collective Members under this Settlement shall not be construed as compensation for purposes of determining eligibility for unemployment compensation or any benefits offered by Defendant, including health and welfare benefits.

14.     **Motion for Approval of FLSA Collective Action Settlement and Authorization of Notice.** Within five (5) days after the execution of this Settlement Agreement, the Parties shall file a Joint Motion for Approval of FLSA Collective Action Settlement ("Approval Motion"). Class Collective Counsel will separately file their petition for fees and costs with the Court five (5) days after execution of this Settlement Agreement. With the Approval Motion, the Parties will file this Settlement Agreement and Exhibits, and the proposed Approval Order.

## RELEASE

15.     **Release of Claims by Settlement Collective Members**. Upon signing, depositing, or cashing their Settlement Check, the Settlement Collective Members shall individually release the Releasees from any and all state, local, or federal claims, obligations, demands, actions, rights, causes of action, and liabilities, whether known or unknown, against Releasees for any and all wage and hour claims that were or could have been asserted based on the facts set forth in the Complaint, including but not limited to claims for alleged unpaid wages and overtime wages, liquidated or other damages, unpaid costs, penalties (including late payment penalties), premium pay, interest, attorneys' fees, litigation costs, restitution, or other compensation and relief for the failure to properly pay such to Plaintiffs, arising under the FLSA, the AMWA, or any other federal, state, or local wage-related law with respect to the time that they were employed by Evergreen Packaging, LLC during the period of April 12, 2019 through the Effective Date of this Agreement. The consideration of the payments made by Evergreen and the terms described herein shall be in exchange for entry of the final judgment and dismissal with prejudice of the Litigation and the release of the Releasees and attorneys as set forth above.

a.      The releases pursuant to this Agreement do not include any claim that cannot be released by private agreements. Moreover, nothing in this Agreement prohibits or prevents a Settlement Collective Member from filing a charge with or participating, testifying, or assisting in any investigation, hearing, whistleblower proceeding or other proceeding before any federal, state, or local government agency, including but not limited to the Equal Employment Opportunity Commission, the Securities and Exchange Commission, or the National Labor

Relations Board. Nor does anything in this Agreement preclude, prohibit, or otherwise limit, in any way, a Settlement Collective Member's rights and abilities to contact, communicate with, report matters to, or otherwise participate in any whistleblower program administered by any such agencies. This release does not apply to any Settlement Collective Member benefit, right, claim, demand, complaint or cause of action under 29 U.S.C. 1132(a)(1)(B) or benefits accrued and under any employee benefit plan.

16.   **Settlement Check**.  On the reverse side of each Settlement Check, above the space for endorsement, will be printed the following settlement and release language:

> By negotiating and cashing this check: (1) I agree to be bound by the Settlement Agreement reached in *Taiwan Wallace, Roger Davis, Michael Sturdivant, Glen Floyd, Emily Colson, Broderick Burnett and Bridgette Tate, Individually and on Behalf of All Others Similarly Situated v. Evergreen Packaging, LLC,* in the in the United States District Court for the Eastern District of Arkansas, Central Division, Case No. 4:22-cv-337-KGB, ("the Litigation"); and (2) I release any and all wage and hour claims for the period from April 12, 2019 to [the date of the Order Granting Approval of the Settlement] that were brought or could have been brought in the Litigation against Evergreen Packaging, LLC, and its parents, subsidiaries, related entities, and affiliates (including their directors, officers, shareholders, owners, employees, attorneys, partners, and agents, past, present and future), and each of their respective predecessors, successors, transferees, and assigns, under the Fair Labor Standards Act and/or any federal or state wage and hour statutory or common law.

17.   Each Settlement Check will also bear a legend directing the payer's bank to only accept the check for payment if: (a) the Settlement Check is endorsed by the payee; and (b) the language referred to in Paragraph 16, or any part of it, has not been altered or deleted.

18.   **General Release by Named Plaintiffs**. In further consideration for payment and acceptance of a Service Award, the Named Plaintiffs, on their own behalf and on behalf of their successors, assigns, agents, heirs and attorneys, release and forever discharge the Releasees from and for all actions, causes of action, suits, controversies, claims and demands whatsoever which they now have, or ever have had, known or unknown, arising from any matter whatsoever, at the present time or at any time prior to the date of execution of this Settlement Agreement, including, but not limited to: (1) any and all wage and hour FLSA claims, known or unknown, contingent or accrued, against Releasees, their parent or subsidiary corporations and all agents thereof, arising under the FLSA which arise from the claims in, or could have been pleaded in, the operative complaint in the Lawsuit herein upon approval of the settlement by the Court and from any and all FLSA debts, liabilities, penalties, demands, obligations, guarantees, costs, expenses, attorneys' fees, and damages for the alleged wage and hour violations under the FLSA; (2) any and all claims under Title VII of the Civil Rights Act of 1964, The Family And Medical Leave Act, the Rehabilitation Act of 1973, the Civil Rights Act of 1866, the Americans with Disabilities Act, the Civil Rights Act of 1991, Employee Retirement Income Security Act, the Older Workers Benefit Protection Act, the Civil Rights Act of 1991, 42 U.S.C. § 1981, the Worker Adjustment and Retraining Notification Act of 1988, the Genetic Information Nondiscrimination Act of 2008, the

Doc ID: 861c887053f5ed22fb4c11522dc47ba090e9f15f

Fair Debt Collection Practices Act, the Equal Pay Act of 1963, any statute, law, order, ordinance, regulation or enactment of any type, including any state wage and hour laws or enactments, from Arkansas; (3) any and all claims for breach of an express or implied contract, including, but not limited to, retaliatory discharge, wrongful discharge and/or any other tort or common law cause of action; (4) any and all claims for breach of public policy or related matters, any and all claims for breach of any covenant of good faith and fair dealing, any and all claims of defamation, libel or slander, any and all claims of intentional infliction of emotional distress; (5) any and all claims for attorneys' fees or costs; and (6) any other claims of any kind, except as expressly excluded elsewhere in this Agreement. The Named Plaintiffs and their counsel acknowledge that by signing this Agreement, and Named Plaintiffs signing their respective settlement checks, all of the Named Plaintiffs agree to be bound to this general release.

19. **Waiver of Age Discrimination/Retaliation Claims and Revocation for Service Award Recipients Who Are 40 Years of Age or Older.** As to the waiver of any and all potential age discrimination and/or retaliation claims under the Age Discrimination in Employment Act ("ADEA"), each Service Award recipient who is 40 years of age or older further understands and acknowledges that he or she have seven (7) calendar days following the execution of this Agreement to revoke the release and General Release contained herein to waive potential age discrimination and/or retaliation claims under the ADEA. Each Service Award recipient who is 40 years of age or older acknowledges that the portion of the release and Released Claims contained herein that waives such potential age discrimination and/or retaliation claims shall not become effective or enforceable until the revocation period has expired, and he or she has not exercised his or her right to revoke. Each Service Award recipient who is 40 years of age or older further understands that in order to revoke the waiver of age discrimination and/or retaliation claims under the ADEA contained in the Released Claims, he or his attorney or she or her attorney must deliver in a written and signed statement of revocation to John A. Ybarra, Esq. Littler Mendelson, P.C., 321 N. Clark St. Suite 1100, Chicago, IL 60654; or (b) e-mail the revocation to John A. Ybarra at jybarra@littler.com within seven (7) calendar days following their execution of this Agreement. In either case, a Service Award recipient who is 40 years of age or older agrees to keep written documentation proving that he or she revoked this Release contained in this Paragraph, either by keeping the documents signed by a representative of Littler Mendelson, P.C. attesting to the delivery of the revocation, or other verification that the e-mail was, in fact, received by Littler Mendelson, P.C. If such revocation of the release and waiver of potential age discrimination and/or retaliation claims occurs, the consideration for the Service Award will be reduced by fifty (50%) percent. The remaining provisions of the Released Claims contained here will remain in full force and effect.

a. **Each Service Award recipient who is 40 years of age or older understands that once he or she signs below, this Agreement will become a legally enforceable agreement under which he or she will be giving up rights and claims he or she may have, on the terms stated in this Agreement.**

b. **Each Service Award recipient who is 40 years of age or older has been given the opportunity to consult with an attorney prior to execution of this Agreement. Each Service Award recipient who is 40 years of age or older acknowledges that he or she has consulted with his or her attorneys and signs this Agreement knowingly, freely and voluntarily.**

Doc ID: 861c887053f5ed22fb4c11522dc47ba090e9f15f

c. Notwithstanding the foregoing provisions, each Named Plaintiff does not release or waive: (i) any claim that he or she could make for unemployment compensation or workers' compensation benefits; (ii) any rights or claims that cannot be released as a matter of law pursuant to this Settlement Agreement and/or the Approval Order; and/or (iii) any rights or claims that may arise after the date he or she signs this Settlement Agreement.

d. Nothing in this Agreement prohibits or prevents a Named Plaintiff from filing a charge with or participating, testifying, or assisting in any investigation, hearing, whistleblower proceeding or other proceeding before any federal, state, or local government agency, including but not limited to the Equal Employment Opportunity Commission, the Securities and Exchange Commission, or the National Labor Relations Board. Nor does anything in this Agreement preclude, prohibit, or otherwise limit, in any way, a Named Plaintiff's rights and abilities to contact, communicate with, report matters to, or otherwise participate in any whistleblower program administered by any such agencies.

## NO PUBLIC COMMENT

20. Class Collective Counsel and Named Plaintiffs shall not make public comments, communicate with the media, or advertise about the Lawsuit or settlement, unless legally required to do so. This includes social networking sites, including but not limited to Facebook, LinkedIn, and Instagram; to any microblogging sites, including but not limited to Twitter; to any personal or public website or blog; video sharing or hosting websites, including but not limited to YouTube and TikTok; and from e-mailing to any distribution list or list-serve. This includes sharing statements or information under the pretense of being "anonymous."

## SETTLEMENT FUND DISTRIBUTION

21. **Funding of Settlement**. Within twenty-one (21) Days after the Effective Date, Evergreen will deposit the Gross Settlement Amount in the Qualified Settlement Fund ("QSF") established by the Claims Administrator. All disbursements shall be made from the QSF. The Claims Administrator shall be the only entity authorized to make withdrawals or payments from the QSF.

22. **Payments**. Subject to the Court's Approval Order, the following amounts shall be paid by the Claims Administrator from the Gross Settlement Amount as set forth below:

a. **Service Award to Named Plaintiffs**. Subject to the Court's approval the Service Awards shall be paid to the Named Plaintiffs, as part of their Settlement Checks, in recognition of their time and efforts on behalf of the Settlement Collective Members, and also in recognition of their broader release of claims as set forth above in Paragraph 18. The complete list of all Service Awards is attached hereto as **Exhibit D**.

Doc ID: 861c887053f5ed22fb4c11522dc47ba090e9f15f

b. **Attorneys' Fees Award**. (i) Subject to the Court's approval, Class Collective Counsel may request a total Fee Award of $187,500.00; (ii) an attorney fee payment of $50,000 was separately negotiated after the Parties reached an agreement on the Gross Member Payments enumerated in Paragraph 10(n) below along with other terms. Class Collective Counsel shall file a petition for Attorneys' Fees and Costs requesting their Fee Award. Defendant does not oppose Class Collective Counsel's request for a Fee Award in the amount of $50,000; (iii) Class Collective Counsel intends to petition the Court for $137,500.00 from the Gross Member Payments above and beyond the separately negotiated $50,000.00 fees and costs amount, based on Class Collective Counsel's engagement agreements with each of the Named Plaintiffs. Class Collective Counsel's request for a Fee Award is a matter between Class Collective Counsel and the Court, to be addressed by the Court and subject to the Court's discretion, approval and determination. Defendant takes no position on the request for the additional $137,500 from the Gross Member Payments. Further, in the event that the Court does not approve the Class Collective Counsel's Fee Award or any other fees requested by Class Collective Counsel from the Gross Settlement Amount, the parties agree that the Court's determinations with respect to Class Collective Counsel's fees will not otherwise affect the terms of this agreement in any way. Any portion of the Fee Award that is not approved by the Court will revert to the Gross Member Payments for the benefit of the Settlement Collective Members. The Fee Award paid by Defendant pursuant to this Agreement shall constitute full satisfaction of Defendant's obligations to pay amounts to any person, attorney, or law firm, for attorneys' fees, expenses, and costs in the Litigation on behalf of Plaintiffs, and shall relieve Defendant from any other claims or liability to any other attorney or law firm for any attorneys' fees, expenses, or costs to which any of them may claim to be entitled on behalf of any Plaintiff. An IRS Form 1099 shall be provided to Class Collective Counsel for the payments made to Class Collective Counsel. Upon court approval of Class Collective Counsel's Fee Award, the Claims Administration shall distribute the court approved Fee Award within thirty (30) days of the Effective Date. Class Collective Counsel shall be solely and legally responsible to pay any and all applicable taxes on the payment made to its firm.

c. **Settlement Checks.** Class Collective Counsel, as the Claims Administrator, shall distribute Settlement Checks to Settlement Collective Members as set forth below in Paragraph 24.

d. **Payroll Taxes**. The Claims Administrator shall pay the appropriate federal and state taxing authorities for both employee-side payroll deductions from Settlement Collective Member Settlement Checks, which shall be calculated in accordance with Paragraph 24 as set forth below. The Claims Administrator shall also provide Evergreen with a separate certification, which shall state that the appropriate taxing authorities described in this Paragraph have been properly paid pursuant to the terms of this Agreement.

e. **No Claim Based Upon Distributions or Payments in Accordance with this Settlement Agreement.** No person shall have any claim against Evergreen,

Doc ID: 861c887053f5ed22fb4c11522dc47ba090e9f15f

DocuSign Envelope ID: D537D3FA-1452-4675-8BGD-CA7EAE960AAE

Plaintiff's Counsel, Evergreen's Counsel, or the Claims Administrator based on distributions or payments made in accordance with this Settlement Agreement.

23.    In consideration for settlement of the Lawsuit and release of all Released Claims, each Settlement Collective Member, shall receive a Settlement Check calculated pursuant to Paragraph 24. As part of the Claims Administrator's duties in effectuating the Settlement, Evergreen's Counsel shall provide the Claims Administrator, a list, in Microsoft Excel format, which includes for each Settlement Collective Member: their name; last known address; last known email address; last known telephone number; location(s) worked; total number of Qualifying Workweeks; and "Random ID" number, along with each Settlement Collective Member's social security number, which will be used solely for purposes of preparing the issuance of the Notice Packet, locating individuals if a Settlement Check is returned as undeliverable, and for tax purposes ("Settlement Collective Member List").

24.    The Claims Administrator shall be required to execute a Confidentiality Agreement protecting Evergreen's confidential data and information relating to Settlement Collective Members' personally identifiable information. The Claims Administrator shall execute and deliver to the Parties this Confidentiality Agreement within seven (7) Days after the date the Court enters the Approval Order, and within ten (10) days thereafter, Evergreen's Counsel shall provide the list referenced in Paragraph 22, above. A copy of the Parties' Confidentiality Agreement is attached hereto as **Exhibit E.**

25.    **Net Member Payments.**  The formula set forth below, for allocating the funds, shall calculate each Settlement Collective Member's Settlement Check and encompass the 50% portion of the Settlement Check treated as owed wages and the 50% portion of the Settlement Check treated as Liquidated Damages.

   a.  **Net Wage Payments:** Up to 50% of the Net Member Payments will be eligible for distribution to the Settlement Collective Members as "Net Wage Payments." ("NWP").  The NWP shall consist of the 50% portion of the Settlement Collective Member's Settlement Check that is treated as owed wages.

   b.  **Liquidated Damages Payments.**  In the aggregate, up to 50% of the Net Member Payments will be eligible for distribution to the Settlement Collective Members as Liquidated Damages. The Liquidated Damages payment will consist of 50% of each Settlement Collective Member's Settlement Check as an equal amount to the Net Member Payment pre-tax formula described in this Paragraph that will be treated as income through a Form 1099.

      i.  The Service Awards to the Named Plaintiffs paid pursuant to Paragraph 21(a) shall be added and paid to the Named Plaintiffs as part of his liquidated damages payment.

      ii.  The formula for allocating the Settlement Collective Member's pre-tax Net Wage and Liquidated Damages Payments shall be as follows:

Doc ID: 861c887053f5ed22fb4c11522dc47ba090e9f15f

1. Each Settlement Collective Member shall receive a "Minimum Payment" of Fifty Dollars ($50.00) from the Net Member Payments in addition to any proportionate settlement share they are allocated as described in this Paragraph, for "Aggregate Minimum Payments" of approximately $25,700.00. The amount of the Net Member Payments remaining after the Aggregate Minimum Payments, Service Awards, and employer-side payroll taxes is the "Net Member Payment Balance."

2. As to the distribution of the Net Member Payment Balance, each Settlement Collective Member shall be assigned one (1) point for each Qualifying Workweek.

3. To calculate each Settlement Collective Member's proportionate share of the Net Member Payment Balance:

   a. Add all points for all Settlement Collective Members together to obtain the "Denominator".

   b. Divide the number of points for each Settlement Collective Member by the Denominator to obtain each Settlement Collective Member's "Portion of the Net Member Payment Balance".

   c. Multiply each Settlement Collective Member's Portion of the Net Member Payment Balance by the Net Member Payment Balance to determine each Settlement Collective Member's "Individual Share of the Net Member Payment Balance."

4. Each Settlement Collective Member's individual Net Member Payment shall be the total of the $50.00 Minimum Payment set forth in Paragraph 24 above plus any Individual Share of the Net Member Payment Balance as described in Paragraph 24(b)(ii).

26. **Failure to Cash Settlement Check.** If any Settlement Collective Member fails to cash his/her Settlement Check within the Acceptance Period of distribution, the uncashed checks and their unclaimed funds and property shall revert back to Evergreen. The Claims Administrator shall return to Evergreen any remaining funds from uncashed checks within thirty (30) Days of the close of the Acceptance Period. Any Settlement Collective Member who does not timely sign and cash a Settlement Check will not be bound by any release of claims.

27. **Payment Procedure**. Notice Packets, including the Settlement Checks, will be mailed, via First Class United States mail, postage prepaid, to Settlement Collective Members by the Claims Administrator no later than thirty-five (35) Days after the Effective Date. Settlement Collective Members must cash their Settlement Checks within the Acceptance Period. When 45 of the 90-day Acceptance Period have expired, the Claims Administrator will mail and email (to the extent an email address is available) a reminder to those Settlement Collective Members who

Doc ID: 861c887053f5ed22fb4c11522dc47ba090e9f15f

have not yet cashed their checks to inform them of the 90-day deadline in the form attached here to as **Exhibit B**.

28.     The Notice Packet, attached hereto, in template format, as **Exhibit A**, to be sent to all Settlement Collective Members, will inform Settlement Collective Members of the right of each individual Settlement Collective Member's right to not sign or cash the Settlement Check. The individual Notice Packet will only identify the Settlement Check amount to the respective Settlement Collective Member receiving the Notice Packet. It will not identify the payments to other Settlement Collective Members or the Gross Settlement Amount. Any Settlement Collective Member who wishes to withdraw from the Settlement may either notify Plaintiff's Counsel or simply refuse to endorse and cash his/her Settlement Check. However, if a Settlement Collective Member cashes his/her Settlement Check, his/her notice of withdrawal shall be null and void. In the event of any dispute concerning whether a Settlement Collective Member has timely and properly withdrawn from the Settlement, Counsel for the Parties shall meet and confer in good faith to resolve such dispute.

29.     If an original Notice Packet is returned as undeliverable with a forwarding address provided by the United States Postal Service, the Claims Administrator will promptly resend a Notice Packet to that forwarding address. If an original Notice Packet is returned as undeliverable and without a forwarding address, the Claims Administrator will perform a skip trace, and if it obtains a more recent address, will resend a Notice Packet to the new address.

30.     **Tax Treatment of Settlement Checks.** One half of each Plaintiff's Settlement Check will be treated as payment in settlement of wage claims, and the other half as payment for liquidated damages. With respect to the payments treated as wage payments, the Claims Administrator will determine the proper tax withholding amounts in accordance with Plaintiffs' previously elected wage withholding instructions. the Claims Administrator will report the wage payments on IRS Forms W-2. the Claims Administrator is responsible for payment of the employer's share of payroll taxes as required by law. The Claims Administrator will report the liquidated damages payment on IRS Forms 1099. The Parties agree that Evergreen is reserving the right to seek any necessary tax forms from the Plaintiffs should they be necessary to make these payments.

31.     **Determination and Payment of Employer Payroll Taxes**. No later than seven days after the Acceptance Period, the Claims Administrator shall determine the employer's share of payroll employment taxes on the Settlement Awards to be paid to Settlement Collective Members and shall communicate such amount to Evergreen's Counsel with a detailed explanation of the calculations. No later than 21 days after receiving that amount from the Claims Administrator, Evergreen shall deposit the employer's share of applicable payroll taxes into the QSF. In the event of any dispute as to the calculation of employer's share of payroll taxes, the Parties and Claims Administrator shall meet and confer in good faith in an attempt to resolve the dispute. If the dispute cannot be resolved, it shall be submitted to the Court for a final determination. The Claims Administrator shall thereafter remit and report the applicable portions of the payroll tax payment to the appropriate taxing authorities on a timely basis pursuant to its duties and undertakings. Evergreen agrees to reasonably cooperate with the Claims Administrator to the extent necessary to determine the amount of the payroll tax payment required under this Section.

32.     Class Collective Counsel and Evergreen's Counsel do not intend for this Settlement Agreement to constitute legal advice relating to the tax liability of any Settlement Collective Member. To the extent that this Settlement Agreement or any of its attachments, is interpreted to contain or constitute advice regarding any federal, state, or local tax issue, such advice is not intended or written to be used, and cannot be used, by any person for the purpose of avoiding any tax liability or penalties.

33.     **The Claims Administrator Shall Track Settlement Check Distribution**. The Claims Administrator shall send, on a bi-weekly basis, a tracking spreadsheet which informs counsel for the Parties of the following information: (1) when Settlement Checks have been mailed; (2) when Settlement Checks have been reissued because a Settlement Check was undeliverable; (3) whether a Settlement Check was undeliverable and had a forwarding address; (4) whether a Settlement Check was forwarded to a Settlement Collective Member's new address; (5) whether a Settlement Check was undeliverable and did not contain a forwarding address; (6) whether a Skip Trace has been performed; (7) whether the Skip Trace provided a new mailing address for an Settlement Collective Member; (8) whether the Settlement Check was mailed to the new Skip Traced address; (9) when Settlement Checks have been cashed; and (10) when Service Awards have been cashed.

34.     **Accounting for Settlement Checks**. The Claims Administrator shall send an accounting of all unclaimed funds as well as a list of the names of all Settlement Collective Members who choose not to cash or deposit their Settlement Checks to the Parties within thirty (30) calendar days after the close of the Acceptance Period. Any Settlement Collective Member who does not timely sign and cash a Settlement Check will not be bound by any federal or state law release of claims as described in this Agreement.

35.     All Settlement Checks will remain valid and negotiable for ninety (90) days from the date of their issuance and may thereafter automatically be canceled if not cashed within that time, at which time the right to recover any Settlement Check will be deemed void and of no further force and effect.

**ADDITIONAL OBLIGATIONS UNDER THE SETTLEMENT AGREEMENT**

36.     **Class Collective Counsel Signatories**. Taiwan Wallace, Roger Davis, Michael Sturdivant, Glen Floyd, Emily Colson, Broderick Burnett and Bridgette Tate, Named Plaintiffs, execute this Settlement on behalf of themselves and in their representative capacities on behalf of the other Plaintiffs. It is agreed that it is burdensome to have all the Plaintiffs execute this Agreement. Further, the Notice previously advised the Plaintiffs that if they chose to join this Litigation: (a) they would be bound by the judgment, whether it was favorable or unfavorable; (b) the Court would make a final decision about whether they are entitled to recover, and for what time period, if any; and (c) the Named Plaintiffs, Taiwan Wallace, Roger Davis, Michael Sturdivant, Glen Floyd, Emily Colson, Broderick Burnett and Bridgette Tate, through their attorneys, would represent their interests and that the attorneys for the collective would represent them in this case. In addition, the consents to join signed and filed by the Plaintiffs provide that

Doc ID: 861c887053f5ed22fb4c11522dc47ba090e9f15f

they consent to becoming a plaintiff in the Litigation, consent to be represented by Class Collective Counsel, and consent to be bound by any settlement of this action or adjudication by the Court.

37.     **No Retaliation**. Evergreen shall not retaliate or take any adverse action against any Settlement Collective Member on the grounds that he/she is eligible to participate or does participate in the Settlement or endorses his/her Settlement Check.

38.     **Defendant's Legal Fees.**  Defendant's legal fees and expenses in the Litigation shall be borne by Defendant.

39.     **Nullification of the Settlement Agreement.**  In the event: (a) the Court does not approve the Settlement as provided herein; or (b) the Settlement does not become final for any other reason; this Agreement shall be null and void and the Parties shall be returned to their respective statuses as of the date immediately prior to the execution of this Agreement.  If this occurs, the Parties shall proceed in all respects as if the Agreement had not been executed.

40.     **Inadmissibility of Settlement Agreement.**  Except for purposes of settling the Litigation, neither this Agreement, nor its terms, nor any document, statement, proceeding, or conduct related to this Agreement, nor any reports or accounts thereof, shall be construed as, offered or admitted in evidence as, received as, or deemed to be evidence for any purpose adverse to the Parties, including, without limitation, evidence of a presumption, concession, indication or admission by any of the Parties of any liability, fault, wrongdoing, omission, concession or damage.

41.     **Amendment or Modification.**  This Agreement may be amended or modified only by a written instrument signed by counsel for all Parties or their successors in interest.

42.     **Entire Settlement Agreement.**  This Agreement constitutes the entire agreement among the Parties, and no oral or written representations, warranties, or inducements have been made to any party concerning this Agreement other than the representations, warranties, and covenants contained and memorialized in such documents.  All prior or contemporaneous negotiations, memoranda, agreements, understandings, and representations, whether written or oral, are expressly superseded hereby and are of no further force and effect.  Each of the Parties acknowledges that they have not relied on any promise, representation, or warranty, express or implied, not contained in this Agreement.

43.     **Authorization to Enter Into Settlement Agreement.**  Counsel for all Parties are expressly authorized by the Parties whom they represent to enter into this Agreement and to take all appropriate action required or permitted to be taken by such Parties pursuant to this Agreement to effectuate its terms, and to execute any other documents required to effectuate the terms of this Agreement.  The Parties and their counsel shall cooperate with each other and use their best efforts to effect the implementation of the Agreement.

44.     **Binding on Successors and Assigns.**  This Agreement shall be binding upon, and inure to the benefit of Plaintiffs and Defendants and their heirs, beneficiaries, executors, administrators, successors, transferees, assigns, or any corporation or any entity with which any party may merge, consolidate, or reorganize.

Doc ID: 861c887053f5ed22fb4c11522dc47ba090e9f15f

DocuSign Envelope ID: D537D3FA-1492-4675-8BGD-CA7EAE960AAE

45.     **Counterparts.**   This Agreement may be executed in one or more counterparts, including by facsimile or email. All executed counterparts and each of them shall be deemed to be one and the same instrument. A faxed or electronically transmitted signature shall bear the same force and effect as an original signature.

46.     **Governing Law**. This Settlement Agreement shall be subject to, governed by, construed, enforced, and administered in accordance with the laws of the State of Arkansas, both in its procedural and substantive aspects, and shall be subject to the continuing exclusive jurisdiction of the Court. This Settlement Agreement shall be construed as a whole according to its fair meaning and intent, and not strictly for or against any party, regardless of who drafted or who was principally responsible for drafting this Settlement Agreement or any specific term or condition thereof.

47.     **Continuing Jurisdiction**. The Court shall retain jurisdiction over the interpretation and implementation of this Settlement Agreement as well as any and all matters arising out of, or related to, the interpretation or implementation of this Agreement and of the Settlement contemplated thereby.

48.     **Cooperation and Drafting.**   The Parties have cooperated in the drafting and preparation of this Agreement; hence the drafting of this Agreement shall not be construed against any of the Parties. The Parties agree that the terms and conditions of this Agreement were negotiated at arms' length and in good faith by the Parties' counsel and reflect a settlement that was reached voluntarily based upon adequate information and after consultation with experienced legal counsel.

49.     **Confidentiality of Material Provided to the Claims Administrator.**   Any materials provided by Defendant to the Claims Administrator shall be kept confidential and used only for purposes of administering the Settlement. No later than thirty (30) days after the expiration of the Acceptance Period, the Claims Administrator shall either destroy or return to Defendant's counsel the original and all copies of any documents designated as "Confidential" that Defendant produced or provided to Class Collective Counsel during the Litigation.

Doc ID: 861c887053f5ed22fb4c11522dc47ba090e9f15f

IN WITNESS WHEREOF, the Parties and their Counsel have executed this Settlement Agreement and Release freely, knowingly, and after due consideration, as follows:

**DEFENDANT:**

*Chandra Mitchell*

_____ Date: 15 February 2024, 2024

Evergreen Packaging, LLC

**REPRESENTATIVE PLAINTIFFS:**

*Taiwan Wallace*

_____ Date: 2-9-2024, 2024

Taiwan Wallace

_____ Date: _____, 2024

Roger Davis

_____ Date: _____, 2024

Michael Sturdivant,

_____ Date: _____, 2024

Glen Floyd

_____ Date: _____, 2024

Emily Colson

_____ Date: _____, 2024

Broderick Burnett

_____ Date: _____, 2024

Bridgette Tate

IN WITNESS WHEREOF, the Parties and their Counsel have executed this Settlement Agreement and Release freely, knowingly, and after due consideration, as follows:

**DEFENDANT:**

_Chandra Mitchell_

_____   Date: 15 February 2024_____, 2024

Evergreen Packaging, LLC

**REPRESENTATIVE PLAINTIFFS:**

_____   Date: _____, 2024

Taiwan Wallace

_Roger Davis Jr_

_____   Date: 2-9-2024_____, 2024

Roger Davis

_____   Date: _____, 2024

Michael Sturdivant,

_____   Date: _____, 2024

Glen Floyd

_____   Date: _____, 2024

Emily Colson

_____   Date: _____, 2024

Broderick Burnett

_____   Date: _____, 2024

Bridgette Tate

DocuSign Envelope ID: D537D3FA-1452-4675-8BGD-CA7EAE960AAE

IN WITNESS WHEREOF, the Parties and their Counsel have executed this Settlement Agreement and Release freely, knowingly, and after due consideration, as follows:

**DEFENDANT:**

*Chandra Mitchell*
_____          Date: 15 February 2024_____, 2024
Evergreen Packaging, LLC

**REPRESENTATIVE PLAINTIFFS:**

_____          Date: _____, 2024
Taiwan Wallace

_____          Date: _____, 2024
Roger Davis

_____          Date: 02/08_____, 2024
Michael Sturdivant,

_____          Date: _____, 2024
Glen Floyd

_____          Date: _____, 2024
Emily Colson

_____          Date: _____, 2024
Broderick Burnett

_____          Date: _____, 2024
Bridgette Tate

Doc ID: 467013291d80c176a06996f2457147c570c7915a

IN WITNESS WHEREOF, the Parties and their Counsel have executed this Settlement Agreement and Release freely, knowingly, and after due consideration, as follows:

**DEFENDANT:**

*Chandra Mitchell*
_____     Date: 15 February 2024, 2024
Evergreen Packaging, LLC

**REPRESENTATIVE PLAINTIFFS:**

_____     Date: _____, 2024
Taiwan Wallace

_____     Date: _____, 2024
Roger Davis

_____     Date: _____, 2024
Michael Sturdivant,

*Glen Floyd*
_____     Date: 2-20-24, 2024
Glen Floyd

_____     Date: _____, 2024
Emily Colson

_____     Date: _____, 2024
Broderick Burnett

_____     Date: _____, 2024
Bridgette Tate

Doc ID: b86a1fa061d844c758d771caea77fc9991377c6e

IN WITNESS WHEREOF, the Parties and their Counsel have executed this Settlement Agreement and Release freely, knowingly, and after due consideration, as follows:

**DEFENDANT:**

*Chandra Mitchell*

_____      Date: 15 February 2024 _____, 2024
Evergreen Packaging, LLC


**REPRESENTATIVE PLAINTIFFS:**

_____      Date: _____, 2024
Taiwan Wallace

_____      Date: _____, 2024
Roger Davis

_____      Date: _____, 2024
Michael Sturdivant,

_____      Date: _____, 2024
Glen Floyd

*Emily Colson*
_____      Date: 2,12 _____, 2024
Emily Colson

_____      Date: _____, 2024
Broderick Burnett

_____      Date: _____, 2024
Bridgette Tate

Doc ID: 20eaaceffb1ef22f5c383114660245ec2dde5f31

IN WITNESS WHEREOF, the Parties and their Counsel have executed this Settlement Agreement and Release freely, knowingly, and after due consideration, as follows:

**DEFENDANT:**

*Chandra Mitchell*
_____     Date: 15 February 2024, 2024
Evergreen Packaging, LLC

**REPRESENTATIVE PLAINTIFFS:**

_____     Date: _____, 2024
Taiwan Wallace

_____     Date: _____, 2024
Roger Davis

_____     Date: _____, 2024
Michael Sturdivant,

_____     Date: _____, 2024
Glen Floyd

_____     Date: _____, 2024
Emily Colson

*Bdd Bott*
_____     Date: 2-13_____, 2024
Broderick Burnett

_____     Date: _____, 2024
Bridgette Tate

IN WITNESS WHEREOF, the Parties and their Counsel have executed this Settlement Agreement and Release freely, knowingly, and after due consideration, as follows:

**DEFENDANT:**

*Chandra Mitchell*
_____     Date: 15 February 2024 _____, 2024
Evergreen Packaging, LLC


**REPRESENTATIVE PLAINTIFFS:**

_____     Date: _____, 2024
Taiwan Wallace

_____     Date: _____, 2024
Roger Davis

_____     Date: _____, 2024
Michael Sturdivant,

_____     Date: _____, 2024
Glen Floyd

_____     Date: _____, 2024
Emily Colson

_____     Date: _____, 2024
Broderick Burnett

*Bridgette Tate*
_____     Date: Feb. 11 _____, 2024
Bridgette Tate

**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION**

TAIWAN WALLACE, ROGER DAVIS,                                    PLAINTIFFS
MICHAEL STURDIVANT, GLEN FLOYD,
EMILY COLSON, BRODERICK BURNETT
and BRIDGETTE TATE, Individually and on
Behalf of All Others Similarly Situated


vs.                                    Case No. 4:22-cv-337-KGB


EVERGREEN PACKAGING, LLC                                    DEFENDANT

# NOTICE OF SETTLEMENT

TO:     [Class Member Name]
        [Address]
        [Address]
        [Last Four Digits of Social Security No.]

*The Court authorized this Notice. This is not a solicitation.*
*This is not a lawsuit against you and you are not being sued.*

**PLEASE READ THIS NOTICE CAREFULLY
AS YOU ARE ENTITLED TO MONEY AS A RESULT OF THIS SETTLEMENT.**

| 1. | **Why Should I Read This Notice?** |
|----|-----|

You are receiving this Notice and the enclosed check because you have filed a signed "Consent to Join Collective Action" in the Lawsuit as an opt-in Plaintiff and agreed to have Plaintiffs' counsel, Sanford Law Firm, PLLC, represent you in the Lawsuit. In addition, Evergreen's records show that you worked for Evergreen as an Hourly Production Worker in Arkansas and performed work in one or more workweeks between April 12, 2019, and [DATE] and did not otherwise release your claims in the case entitled *Carreno v. Evergreen Packaging*, Case No. 20-CV-01502, United States District Court for the Eastern District of Arkansas, making you an "Eligible Settlement Collective Member."

On April 12, 2022, Taiwan Wallace, Roger Davis, Michael Sturdivant, Glen Floyd, Emily Colson, Broderick Burnett, and Bridgette Tate ("Plaintiffs") commenced this lawsuit by filing a Complaint in the United States District Court for the Eastern District of Arkansas, Case No. 4:22-cv-337-KGB (the "Lawsuit"). In the Lawsuit, Plaintiffs asserted violations of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA") and the Arkansas Minimum Wage Act, Ark. Code Ann. § 11-4-201, *et seq.* ("AMWA") against Evergreen Packaging, LLC ("Evergreen") on behalf of

1

themselves, and they sought to bring their claims as a collective action on behalf of a class of allegedly similarly situated employees. Plaintiffs alleged in the lawsuit that Evergreen violated the FLSA and the AMWA by engaging in a rounding practice whereby hours worked by employees allegedly were rounded down and went unrecorded and uncompensated.   Evergreen denied Plaintiffs' claims and maintains that its employees were and are compensated correctly under federal and state wage and hour laws.

The parties reached an agreement to settle this lawsuit for the purpose of avoiding further litigation with its attendant risk, expense, and inconvenience. No ruling on the merits of the claims in this lawsuit has been made and no party has prevailed. The Court approved the settlement agreement and authorized that this Notice be sent to you.

**This Notice explains the terms of the Settlement and your right to your award under the Settlement.**

| 2. | What Are the Terms of the Settlement? |
|---|---|

Under the terms of the Settlement Agreement, Evergreen agreed to pay a total of Four Hundred Forty-Nine Thousand Nine Hundred Ninety-Nine Dollars ($449,999.00). to settle the claims asserted in the Lawsuit and pay for attorneys' fees (the "Gross Settlement Amount"). Deductions from this amount have been made for (a) Plaintiffs' Counsel's attorneys' fees and costs in the amount of [AMOUNT]; (b) Service Awards to the Named Plaintiffs; and (c) $8,500.00 to be paid for the Claims Administrator's reasonable fees and costs. After subtracting these amounts from the Gross Settlement Amount, the balance of the funds ("Net Member Payment Balance") will be apportioned among all Eligible Settlement Collective Members.

Your payment consists of a minimum settlement award of $50.00 ("Minimum Payment"). Additionally, all Eligible Settlement Collective Members will receive an additional *pro rata* payment based on the total number of workweeks they worked as an Hourly Production Worker ("Qualifying Workweeks"), at any time between April 12, 2019, and [DATE].

The formula for calculation of the *pro rata* payment is as follows:

    i.    Each Qualifying Workweek will be assigned one settlement share;

    ii.    The total number of settlement shares will be added together, and the resulting sum will be divided into the Net Member Payment Balance to reach a per-share dollar figure. That figure will then be multiplied by your individual number of settlement shares to determine the Individual Share of the Net Member Payment Balance that you will be entitled to receive.

An Individual Share of the Net Member Payment Balance calculated under this formula is in addition to the Minimum Payment. Qualifying Workweeks have been calculated for you based on records provided by Evergreen. You do not need to do anything to be eligible to receive your Individual Share of the Net Member Payment Balance.

2

If you want to learn more information about your total number of Qualifying Workweeks, you may contact the Claims Administrator. If you have any reason to dispute the total number of Qualifying Workweeks, you must provide the Claims Administrator with documentation to show different employment dates as an Hourly Production Worker and/or records of time worked by no later than [DEADLINE].

Fifty percent (50%) of your Settlement Award has been treated as back wages, to be reported on an IRS Form W-2, and the remaining 50% has been treated as non-wage penalties and liquidated damages, to be reported on an IRS Form 1099.

We cannot provide you with any tax advice, and you should contact your accountant or tax-related advisors for any questions about taxes you may owe on these amounts.

| 3. | What Claims Are Released by the Settlement? |
|---|---|

Upon signing, depositing, or cashing the enclosed settlement check, you release all wage and hour claims under federal or state law you have or may have for the period of April 12, 2019 to [DATE] (the "Collective Period") that were brought or could have been brought in this lawsuit against Evergreen Packaging, LLC, Pactiv Evergreen Group Holdings, Inc., Pactiv LLC, and their parents, subsidiaries, related entities, and affiliates (including their directors, officers, shareholders, owners, employees, attorneys, partners, and agents, past, present and future), and each of their respective predecessors, successors, transferees, and assigns ("Releasees"). Specifically, you, as an Eligible Settlement Collective Member, release, to the extent permitted by law, any and all wage and hour claims that were or could have been asserted based on the facts set forth in the Lawsuit, including but not limited to claims for alleged unpaid wages and overtime wages, liquidated or other damages, unpaid costs, penalties (including late payment penalties), premium pay, interest, attorneys' fees, litigation costs, restitution, or other compensation and relief for the failure to properly pay such amounts, arising under the FLSA, the AMWA, or any other federal, state, or local wage-related law with respect to the time that you were employed by Evergreen Packaging, LLC during the period of April 12, 2019 through [DATE]. The consideration of the payments made by Evergreen and the terms described herein shall be in exchange for entry of the final judgment and dismissal with prejudice of the Lawsuit and the release of the Releasees and attorneys as set forth above.

**It is your decision whether to participate in the Settlement.** Importantly, since April 12, 2019, the statute of limitations has not run on any wage claims you might have, which were brought in this lawsuit against Evergreen. This means that your rights to file a claim or collect potential damages was preserved. The statute of limitations on such claims will begin to run again on [DATE].

**If you are a current employee of Evergreen Packaging, LLC, your employment will not be affected by cashing or depositing your Settlement Check.** The law prohibits retaliation against employees for exercising their rights under the FLSA and the AMWA. As such, Evergreen will not discriminate or retaliate against you in any way because of your decision to participate, or not participate, in the litigation or this settlement.

4889-8714-7186.1 / 117816-1001

| | |
|---|---|
| **4.** | **When Will I Receive My Settlement Check?** |

Enclosed is your Settlement Check. **Your Settlement Check will automatically expire on** _____, _____. **Please cash or deposit your check AS SOON AS POSSIBLE.**

| | |
|---|---|
| **5.** | **Who Are The Attorneys Representing Named Plaintiffs And The Eligible Settlement Collective Members?** |

Named Plaintiffs and the Eligible Settlement Collective Members are represented by the following attorneys:

**Josh Sanford**
**Sean Short**
Sanford Law Firm, PLLC
Kirkpatrick Plaza, Suite 510
10800 Financial Centre Parkway
Little Rock, AR 72211
800-615-4946 (telephone)
501-221-0088 (telephone)
501-356-3095 (text)

| | |
|---|---|
| **6.** | **How Will the Attorneys for the Settlement Class Be Paid?** |

You do not have to pay the attorneys who have been appointed by the Court to represent the Eligible Settlement Collective Members. The Court approved the above-referenced amounts for attorneys' fees and expenses, which came out of the Gross Settlement Amount.

| | |
|---|---|
| **7.** | **Who May I Contact If I Have Further Questions?** |

IF YOU NEED MORE INFORMATION OR HAVE ANY QUESTIONS, you may contact Plaintiffs' Counsel at the telephone numbers listed above, or the Claims Administrator at the contact information below. Please refer to the "Evergreen Settlement."

RG2 Claims Administration LLC
[INSERT ADDRESS]
[INSERT TELEPHONE NUMBER]
[INSERT EMAIL]

This Notice only summarizes the Lawsuit, the Settlement Agreement, and related matters. For more information, you may inspect the Court files at the Clerk of the United States District Court for the Eastern District of Arkansas, Richard Sheppard Arnold United States Courthouse, 500 West Capitol Avenue, Little Rock, AR 72203 (street address) or 600 W. Capitol Ave., Rm A149, Little Rock, AR 72201 (mailing address). **PLEASE DO NOT TELEPHONE THE COURT FOR INFORMATION REGARDING THIS SETTLEMENT OR THE CLAIM PROCESS.**

4

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

APR 1 2 2022

TAMMY H. DOWNS, CLERK

By:_____
                         DEP CLERK

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**TAIWAN WALLACE, ROGER DAVIS,**                                    **PLAINTIFFS**
**MICHAEL STURDIVANT, GLEN FLOYD,**
**EMILY COLSON, BRODERICK BURNETT**
**and BRIDGETTE TATE, Individually and**
**on Behalf of All Others Similarly Situated**

vs.                               No. 4:22-cv-*337-KGB*

**EVERGREEN PACKAGING, LLC**                                        **DEFENDANT**

<u>**ORIGINAL COMPLAINT—COLLECTIVE ACTION**</u>

Plaintiffs Taiwan Wallace, Roger Davis, Michael Sturdivant, Glen Floyd, Emily

Colson, Broderick Burnett and Bridgette Tate (collectively "Plaintiffs"), each individually

and on behalf of all others similarly situated, by and through their attorneys Daniel Ford

and Josh Sanford of Sanford Law Firm, PLLC, for their Original Complaint—Collective

Action ("Complaint") against Defendant Evergreen Packaging, LLC ("Defendant"), state

and allege as follows:

*This case assigned to District Judge Baker
and to Magistrate Judge Ervin*

I.    **PRELIMINARY STATEMENTS**

1.    This is a collective action brought by Plaintiffs, each individually and on

behalf of all others similarly situated, against Defendant for violations of the overtime

provisions of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA"), and the

overtime provisions of the Arkansas Minimum Wage Act, Ark. Code Ann. § 11-4-201, *et*

*seq.* ("AMWA").

2.    Plaintiff seeks a declaratory judgment, monetary damages, liquidated

damages, prejudgment interest, and a reasonable attorney's fee and costs as a result of

Defendant's policy and practice of failing to pay proper overtime compensation under the FLSA and the AMWA.

3.       This case is related to Richard Carreno v. Evergreen Packaging, LLC, case no. 4:20-cv-1502-ERE, filed December 29, 2020, in this District. The claims are substantially similar and the defendant is the same. Plaintiffs have filed or will soon file a Notice of Related Case.

## II.       JURISDICTION AND VENUE

4.       The United States District Court for the Eastern District of Arkansas has subject matter jurisdiction over this suit under the provisions of 28 U.S.C. § 1331 because this suit raises federal questions under the FLSA.

5.       This Complaint also alleges AMWA violations, which arise out of the same set of operative facts as the federal cause of action; accordingly, this Court has supplemental jurisdiction over Plaintiff's AMWA claims pursuant to 28 U.S.C. § 1367(a).

6.       Venue lies properly within this Court under 28 U.S.C. § 1391(b)(1) and (c)(2), because the State of Arkansas has personal jurisdiction over Defendant, and Defendant therefore "resides" in Arkansas.

7.       Plaintiffs were employed by Defendant at its factory located in the Central Division of the Eastern District of Arkansas.

8.       The acts alleged in this Complaint had their principal effect within the Central Division of the Eastern District of Arkansas, and venue is proper in this Court pursuant to 28 U.S.C. § 1391.

## III.   THE PARTIES

9.      Plaintiff Taiwan Wallace is an individual and resident and domiciliary of Jefferson County.

10.     Plaintiff Roger Davis is an individual and resident and domiciliary of Jefferson County.

11.     Plaintiff Michael Sturdivant is an individual and resident and domiciliary of Jefferson County.

12.     Plaintiff Glen Floyd is an individual and resident and domiciliary of Grant County.

13.     Plaintiff Emily Colson is an individual and resident and domiciliary of Jefferson County.

14.     Plaintiff Broderick Burnett is an individual and resident and domiciliary of Jefferson County.

15.     Plaintiff Bridgette Tate is an individual and resident and domiciliary of Jefferson County.

16.     Defendant is a foreign limited liability company registered to do business in Arkansas.

17.     Defendant's registered address for service is Corporation Service Company, at 300 Spring Building, 300 South Spring Street, Suite 900, Little Rock, Arkansas 72201.

18.     Defendant maintains a website at https://evergreenpackaging.com/.

## IV.   FACTUAL ALLEGATIONS

19.   Plaintiffs repeat and reallege all the preceding paragraphs of this Complaint as if fully set forth in this section.

20.   Defendant owns and operates a paper mill in Jefferson County.

21.   Within the two years preceding the filing of this Complaint, Defendant has continuously employed at least four employees.

22.   Defendant employs two or more individuals who engage in interstate commerce or business transactions, or who produce goods to be transported or sold in interstate commerce, or who handle, sell, or otherwise work with goods or materials that have been moved in or produced for interstate commerce.

23.   Defendant's annual gross volume of sales made or business done is not less than $500,000.00 (exclusive of excise taxes at the retail level that are separately stated) in each of the three years preceding the filing of the Original Complaint.

24.   Defendant is an employer within the meaning of the FLSA and has been, at all times relevant herein, Plaintiffs' employer.

25.   At all times material herein, Plaintiffs have been entitled to the rights, protections, and benefits provided under the FLSA.

26.   Defendant employed Plaintiffs as production workers within the three years preceding the filing of this lawsuit.

27.   Defendant classified Plaintiffs as hourly employees, nonexempt from the overtime requirements of the FLSA.

28.   Defendant also employed other production workers.

29.     Defendant also classified other production workers as hourly employees, nonexempt from the overtime requirements of the FLSA.

30.     Defendant directly hired Plaintiffs and other production workers to work on its behalf, paid them wages and benefits, controlled their work schedules, duties, protocols, applications, assignments and employment conditions, and kept at least some records regarding their employment.

31.     Plaintiffs and other production workers were scheduled to work eight hours per day, but they were regularly required to work more hours than they were scheduled to wait for the next person to show up for their shift.

32.     Plaintiffs and other production workers recorded their hours worked via an electronic timekeeping system, which logged their hours into an electronic payroll system maintained by Defendant.

33.     Upon information and belief, Defendant rounded hours worked by Plaintiffs and other production workers' hours in Defendant's favor by rounding down in approximately fifteen-minute increments.

34.     For example, if a production worked clocked in for 8 hours and 10 minutes, Defendant would round that worker's hours down to exactly 8 hours.

35.     Defendant's rounding practice resulted in hours worked by production workers which went unrecorded and uncompensated.

36.     Because Plaintiffs and other production workers regularly worked over forty hours in a week, the hours which went uncompensated due to Defendant's rounding practices created overtime violations.

37.     Because Plaintiffs and other production workers worked hours which went uncompensated, Defendant failed to pay Plaintiffs and other production workers a lawful overtime premium for all hours worked over forty each week.

38.     Defendant knew or should have known that Plaintiffs and other production workers were working additional hours for which they were not compensated.

39.     Upon information and belief, Defendant's clock-in and rounding policies were the same for all production workers.

40.     At all relevant times herein, Defendant has deprived Plaintiffs and other production workers of regular wages and proper overtime compensation for all of the hours worked over forty per week.

41.     Defendant knew or showed reckless disregard for whether the way it paid Plaintiffs and other production workers violated the FLSA and AMWA.

## V.     REPRESENTATIVE ACTION ALLEGATIONS

42.     Plaintiff repeats and realleges all previous paragraphs of this Complaint as though fully set forth herein.

43.     Plaintiffs bring this claim for relief for violation of the FLSA as a collective action pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b), on behalf of all persons who were, are, or will be employed by Defendant at any time within the applicable statute of limitations period, who are entitled to payment of the following types of damages:

A.     Overtime premiums for all hours worked in excess of forty in any week;

B.     Liquidated damages; and

C.     Attorneys' fees and costs.

44.     Plaintiffs propose the following collective under the FLSA:

**All hourly-paid production workers who recorded
at least 39 hours in any week within the last three years.**

45.     In conformity with the requirements of FLSA Section 16(b), each Plaintiff has filed or will soon file written a Consent to Join this lawsuit.

46.     The relevant time period dates back three years from the date on which Plaintiff's Original Complaint—Collective Action was filed herein and continues forward through the date of judgment pursuant to 29 U.S.C. § 255(a), except as set forth herein below.

47.     The proposed FLSA collective members are similarly situated in that they share these traits:

A.     They were paid hourly;

B.     They were subject to Defendant's common policy of rounding their time in favor of Defendant;

C.     They worked over forty hours in at least one week;

D.     They were subject to Defendant's common policy of failing to pay proper overtime wages as required by the FLSA; and

E.     They had substantially similar job duties, requirements, and pay provisions.

48.     Plaintiffs are unable to state the exact number of the collective but believes that the collective exceeds thirty persons.

49.     Defendant can readily identify the members of the collective, who are a certain portion of the current and former employees of Defendant.

50.     The names and physical and mailing addresses of the FLSA collective action plaintiffs are available from Defendant, and a Court-approved Notice should be provided to the FLSA collective action plaintiffs via first class mail and email to their last

known physical and electronic mailing addresses as soon as possible, together with other documents and information descriptive of Plaintiff's FLSA claim.

## VI.   FIRST CLAIM FOR RELIEF
### (Individual Claim for Violation of the FLSA)

51.   Plaintiffs repeat and reallege all previous paragraphs of this Complaint as though fully incorporated in this section.

52.   Plaintiffs assert this claim for damages and declaratory relief pursuant to the FLSA, 29 U.S.C. § 201, *et seq.*

53.   At all relevant times, Defendant has been, and continues to be, an enterprise engaged in commerce within the meaning of the FLSA, 29 U.S.C. § 203.

54.   29 U.S.C. §§ 206 and 207 require any enterprise engaged in commerce to pay a minimum wage for all hours worked up to 40 in one week and to pay 1.5x their regular wages for all hours worked over 40, unless an employee meets certain exemption requirements of 29 U.S.C. § 213 and all accompanying DOL regulations.

55.   Defendant classified Plaintiffs as nonexempt from the requirements of the FLSA.

56.   Despite Plaintiffs' entitlement to overtime payments under the FLSA, Defendant failed to pay Plaintiffs for all hours worked, including 1.5x their regular rate of pay for all hours worked in excess of 40 per week.

57.   Defendant knew or should have known that its actions violated the FLSA.

58.   Defendant's conduct and practices, as described above, were willful.

59.   By reason of the unlawful acts alleged herein, Defendant is liable to Plaintiffs for monetary damages, liquidated damages and costs, including reasonable attorneys' fees provided by the FLSA for all violations which occurred beginning at least

three years preceding the filing of Plaintiffs' initial complaint, plus periods of equitable tolling.

60.    Defendant has not acted in good faith nor with reasonable grounds to believe its actions and omissions were not a violation of the FLSA, and, as a result thereof, Plaintiffs are entitled to recover an award of liquidated damages in an amount equal to the amount of unpaid overtime premium pay described above pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b).

61.    Alternatively, should the Court find that Defendant acted in good faith in failing to pay Plaintiffs as provided by the FLSA, Plaintiff is entitled to an award of prejudgment interest at the applicable legal rate.

## VII.    SECOND CLAIM FOR RELIEF
### (Collective Action Claim for Violation of the FLSA)

62.    Plaintiffs repeat and reallege all previous paragraphs of this Complaint as though fully incorporated in this section.

63.    Plaintiffs assert this claim for damages and declaratory relief on behalf of all similarly situated employees pursuant to the FLSA, 29 U.S.C. § 201, *et seq.*

64.    At all times relevant times to this Complaint, Defendant has been, and continues to be, an "employer" of Plaintiffs and all those similarly situated within the meaning of the FLSA, 29 U.S.C. § 203.

65.    At all relevant times, Defendant has been, and continues to be, an enterprise engaged in commerce within the meaning of the FLSA, 29 U.S.C. § 203.

66.    29 U.S.C. §§ 206 and 207 require any enterprise engaged in commerce to pay all employees a minimum wage for all hours worked up to 40 each week and to pay 1.5x their regular wages for all hours worked over 40 in a week, unless an employee

meets certain exemption requirements of 29 U.S.C. § 213 and all accompanying Department of Labor regulations.

67.     Defendant classified Plaintiffs and other similarly situated employees as non-exempt from the overtime provisions of the FLSA.

68.     Despite the entitlement of Plaintiffs and those similarly situated to overtime payments under the FLSA, Defendant failed to pay Plaintiffs and all those similarly situated an overtime rate of 1.5x their regular rates of pay for all hours worked over 40 per week.

69.     Defendant deprived Plaintiffs and similarly situated employees of compensation for all of the hours worked over forty per week, in violation of the FLSA.

70.     Defendant knew or should have known that its actions violated the FLSA.

71.     Defendant's conduct and practices, as described above, were willful.

72.     By reason of the unlawful acts alleged herein, Defendant is liable to Plaintiffs and all similarly situated employees for monetary damages, liquidated damages and costs, including reasonable attorneys' fees provided by the FLSA for all violations which occurred beginning at least three years preceding the filing of Plaintiffs' initial complaint, plus periods of equitable tolling.

73.     Defendant has not acted in good faith nor with reasonable grounds to believe its actions and omissions were not a violation of the FLSA, and, as a result thereof, Plaintiffd and similarly situated employees are entitled to recover an award of liquidated damages in an amount equal to the amount of unpaid overtime premium pay described above pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b).

74.     Alternatively, should the Court find that Defendant acted in good faith in failing to pay Plaintiff and the collective members as provided by the FLSA, they are entitled to an award of prejudgment interest at the applicable legal rate.

## VIII.   THIRD CLAIM FOR RELIEF
### (Individual Claims for Violation of the AMWA)

75.     Plaintiffs repeat and reallege all previous paragraphs of this Complaint as though fully incorporated in this section.

76.     Plaintiff asserts this claim for damages and declaratory relief pursuant to the AMWA, Ark. Code Ann. § 11-4-201, et seq.

77.     At all times relevant to this Complaint, Defendant was Plaintiff's "employer" within the meaning of the AMWA, Ark. Code Ann. § 11-4-203(4).

78.     Sections 210 and 211 require employers to pay a minimum wage for all hours worked up to forty in one week and to pay 1.5x regular wages for all hours worked over forty hours in a week, unless an employee meets the exemption requirements of 29 U.S.C. § 213 and accompanying DOL regulations.

79.     Defendant classified Plaintiffs as nonexempt from the requirements of AMWA.

80.     Despite the entitlement of Plaintiffs to overtime payments under the AMWA, Defendant failed to pay Plaintiffs an overtime rate of 1.5x their regular rate of pay for all hours worked over 40 each week.

81.     Defendant knew or should have known that its actions violated the AMWA.

82.     Defendant's conduct and practices, as described above, were willful, intentional, unreasonable, arbitrary and in bad faith.

83.     By reason of the unlawful acts alleged herein, Defendant is liable to Plaintiffs for monetary damages, liquidated damages, and costs, including reasonable attorneys' fees, for all violations that occurred within the 3 years prior to the filing of this Complaint pursuant to Ark. Code Ann. § 11-4-218.

84.     Alternatively, should the Court find that Defendant acted in good faith in failing to pay Plaintiffs as provided by the AMWA, Plaintiffs are entitled to an award of prejudgment interest at the applicable legal rate.

## IX.     PRAYER FOR RELIEF

WHEREFORE, premises considered, Plaintiffs Taiwan Wallace, Roger Davis, Michael Sturdivant, Glen Floyd, Emily Colson, Broderick Burnett and Bridgette Tate, each individually and on behalf of all others similarly situated, respectfully pray that Defendant be summoned to appear and to answer this Complaint and for declaratory relief and damages as follows:

A.     Declaratory judgment that Defendant's practices alleged in this Complaint violate the FLSA, the AMWA, and their related regulations;

B.     Certification of a collective under Section 216 of the FLSA of all individuals similarly situated, as further defined in any motion for the same;

C.     Judgment for damages suffered by Plaintiffs and others similarly situated for all unpaid overtime wages under the FLSA, the AMWA and their related regulations;

D.     Judgment for liquidated damages owed to Plaintiffs and all others similarly situated pursuant to the FLSA, the AMWA, and their related regulations;

E.     An order directing Defendant to pay Plaintiffs and all others similarly situated interest, a reasonable attorney's fee and all costs connected with this action; and

F.    Such other and further relief as this Court may deem just and proper.

Respectfully submitted,

**TAIWAN WALLACE, ROGER DAVIS, MICHAEL STURDIVANT, GLEN FLOYD, EMILY COLSON, BRODERICK BURNETT and BRIDGETTE TATE, Each Individually and on Behalf of Others Similarly Situated, PLAINTIFFS**

SANFORD LAW FIRM, PLLC
Kirkpatrick Plaza
10800 Financial Centre Pkwy, Suite 510
Little Rock, Arkansas 72211
Telephone: (501) 221-0088
Facsimile: (888) 787-2040

Daniel Ford
Ark. Bar No. 2014162
daniel@sanfordlawfirm.com

Josh Sanford
Ark. Bar No. 2001037
josh@sanfordlawfirm.com

Exhibit D - Service Awards

| Name | Service Award |
|------|---------------|
| Burnett, Broderick | $500.00 |
| Colson, Emily | $500.00 |
| Davis, Roger | $500.00 |
| Floyd, Glen | $500.00 |
| Sturdivant, Michael | $500.00 |
| Tate, Bridgette | $500.00 |
| Wallace, Taiwan | $2,000.00 |